Hare v. Hall, et al.

---

## HARE v. HALL, ET AL.

1. EXECUTION: *Venditioni exponas after death of judgment debtor.*
   An execution levied on land in the life of the judgment debtor may be enforced by *venditioni exponas* after his death.

2. JUDGMENT: *By confession before clerk: Redemption from execution sale.*
   Since the adoption of the civil code of practice, a judgment by confession before the clerk of the circuit court in vacation is unauthorized and void; but such judgment creditor redeeming land of the judgment debtor from sale under a prior judgment, with the consent of the purchaser, and receiving the sheriff's deed therefor, will obtain good title to it.

3. EXECUTION SALE: *Redemption: Priority of subsequent creditors.*
   A third judgment creditor may intercept a second in redeeming land from the execution sale of the first, and then the second can redeem only from the third. Age of judgments gives no priority in the right of redemption.

APPEAL from *Jefferson* circuit court in chancery.

Hon. X. J. PINDALL, Circuit Judge.

*M. L. Bell*, for appellant.

In equity fraud may be presumed from facts and circumstances. *Myrick v. Jacks, 33 Ark., 430.* It clearly ap-

Hare v, Hall. et al.

pears that John M. Hall was merely a trustee for John B. Hall, and the attempt to pass title to Allen & Co. was fraud-ulent and void.

*J. M. Moore* for Thos. H. Allen & Co.

The judgment by confession before the clerk was not void. *Ch. 133, sec. 140, Gould's Dig.*, were not re-pealed by *sections ———— of the Code. 29 Ark. 110–1*; *7 Ark., 397*. But if void, Allen & Co, are entitled to be treated as the assignee of Carlton's bid, and entitled to his rights. *31 Ark., 443*.

Fraud is never presumed. Circumstances of suspicion, leading to no certain result, are not sufficient.

Swinson did not make his enterplea a cross-bill against Allen & Co., nor obtain service upon them. *Newman on Pl. and Pr., 454, 19–22, 626; 24 Ark., 371; 31 Id., 204*.

The land was sold on an execution issued after the death of Hall, and invalid. No specific lien had been fixed by levy prior to his death as in *Barber v. Peay, 31 Ark., 392*.

As to the homestead tract, it was not shown or alleged that Hall filed a schedule or took the necessary steps to se-cure a homestead. *Norris v. Kidd, 28 Ark., 485*.

EAKIN, J. This is a bill by a purchaser of a plantation under execution sale, against parties claiming by other pur-chases under other judgments against the same defendant; in which suit there is also an interplea by one claiming a por-tion of the lands as a purchaser under an execution and *ven. ex.* from the federal circuit court; also against the same defendant. Questions arising under the homestead law are also involved. It is impossible to obtain any toler-ably clear conception of the equities and legal rights of the parties without a succinct statement of the acts and pro-ceedings in chronological order.

Beginning with the oldest judgment:   This was recovered
in the Jefferson circuit court on the twenty-sixth of Febru-
ary, 1874, at the suit of William and Mary Madden against
John B. Hall and others for a debt of $3,500 ; damages
$981.12, with costs.    An execution issued on the thirtieth
day of September, 1874, was  levied upon  the following
lands with others :   The west half and the northeast quarter
"and part of the southeast quarter" of section 36 in town-
ship 5, south range, 8 west.   Some of the other lands, about
the same in quantity, lay contiguous upon the south in sec-
tions 1 and 2 of township 6.   All these contiguous lands,
so levied upon, were sold under the execution on the four-
teenth day of November, 1874, and purchased by C. H.
Carlton for $4500, "except 160 acres, claimed by J.B. Hall
as his homestead exemption."    Carlton gave his own bond,
with security, at three months for the purchase money, but
bought for the benefit, as is claimed, of John M. Hall, who
is a nephew of John B., and who at the end of three months
paid Carlton's bond.

On the thirty-first day of October, 1874, Perkins, Swin-
son & Co. recovered a judgment in the United States court
for the eastern district of Arkansas (in which the lands lie)
against John B. Hall for $11,206.67, bearing interest at 8
per cent., on which execution, issued on the sixteenth of No-
vember following, was returned unsatisfied, no property
having been found,   On the eighth of November, 1875, an-
other execution was issued, which was levied by the marshal
on a tract of land set forth by metes and bounds, contain-
ing by estimate 160 acres.   It will be apparent to a survey-
or that it includes the southern tier of forty acre tracts in
said section 36, and the northern tier of forties in section
1 of the adjacent township on the south, with the exception
of a small portion at the eastern end of both tiers.   The
township line between 5 and 6 runs through the centre.
By direction of plaintiff, the execution was returned with-

out sale, but with the levy preserved. On the twenty-fourth day of October, 1877, this judgment was revived on *scire facias* in favor of S. Magress Swinson, who was shown to have become the sole owner, and the lien was continued, for the term prescribed by law, from the third of August, 1877, the date of the *scire facias*. Afterwards, on the eighteenth day of February, 1878, John B. Hall died, and by another *sci. fa.* the judgment was revived against his administrator, John M. Hall, on the tenth of April, 1878. On the twenty-seventh of the same month, a *ven. ex.* was issued to the marshal, reciting the former levy and commanding a sale of the lands. They were sold on the twenty-ninth of May, 1878, and purchased by Swinson, the plaintiff in execution, for $3,000. The marshal's deed was executed on the second day of June, 1879.

On the sixteenth day of November, 1874, John Williams & Son recovered in the Jefferson circuit court a judgment against John B. Hall for $14,319.22, which judgment now belongs to Hare, the complainant in this suit. Execution issued on the thirteenth of November, 1875, and was levied on the same lands in section 36, embraced in the first levy under Madden's judgment, *and also the southeast fractional quarter of section 35* in the same township, which does not appear to have been touched by the other levies. The lands were purchased by Hare for $4,100, and a deed was obtained from the sheriff on the twelfth of April, 1877.

On the twenty-first day of April, 1875, in vacation, Thos. H. Allen & Co. appeared before the clerk of the circuit court of Jefferson county and filed under oath a statement of a debt due him from John B. Hall of $4499.58. Hall appeared and confessed, and the clerk entered judgment for the amount. Execution issued on the fifteenth of July following. Allen & Co. offered to credit this execution with $4,000 for the redemption of the lands which had been purchased under the Madden judgment, which

·offer was endorsed by the sheriff and returned. They also redeemed from John M. Hall the certificate of purchase, which had been given to Carlton, and which he had assigned to John M. Upon this the sheriff executed a deed to Allen & Co. of the lands bought by Carlton, again excepting the 160 acres claimed by John B. Hall as his homestead. This deed bears date the twenty-first of January, 1876.

Hare filed the bill in this suit about the eighth of September, 1877, in the life time of John B. Hall, against him, John M. Hall and the firm of Thos. H. Allen & Co., taking no notice of Swinson's claim under the federal judgment. He relies upon his legal rights under his deed, which, although not in possession, he says he cannot enforce on account of the claims of Allen & Co, as they appear of record. He charges fraudulent combination between them and the Halls and Carlton to defeat his claim, in this especially, that the lands were originally bought under the Madden judgment by John M. Hall through Carlton, with the means of John B. Hall and for his benefit; and that to prevent a redemption by himself under his judgment, the plan of confessing a judgment in favor of Allen & Co. was concocted; and that by their credit and the redemption from John M. it became impossible for him to redeem without advancing $9,000; that the debt of Allen & Co. was fictitious, and that they acted for the protection of John B. Hall against his other creditors. He says that John M. Hall originally paid nothing on the purchase, and that Allen & Co. paid him nothing in redemption, and he offers to reimburse them with proper interest any amount they may have paid. He says the homestead is worth more than $2500, and offers to pay to John B. Hall that amount of its value. He prays that all the proceedings under the Madden redemption, with the judgment in favor of Allen & Co., be set aside and annulled as impediments to his legal rights, and for general relief.

Hare v. Hall, et al.

The Halls answered, denying all the charges of fraud ·explicitly and in detail. Allen & Co. adopt their answers, make like denials, and claim that their debt was real, and the judgment taken by them was in good faith to secure its payment.

Pending the suit, Swinson, on the second of March, 1880, ·after the death of John B. Hall, and after he had obtained the marshal's deed, was allowed to come in as a party and :set up his right under that to the homestead, which appears to have been the land marked off by metes and bounds, and which he had purchased. With regard to that it may be ·said in passing that, although John B. Hall marked it off and seems to have been understood as claiming it for a homestead, and although that seems to be conceded to him in the execution of the Madden judgment, there is no showing that he ever made formal claim of it as exempt in any ·of the proceedings.

The cause was heard upon the pleadings, exhibits and ·depositions, the latter of which were mostly upon the point ·of fraud. Some of the answers assumed the form of cross-bills, but it is not necessary to notice them more particularly. The pleadings were sufficient to authorize the chancellor to take cognizance of, and adjust all the equities amongst all the parties before it.

The chancellor held that there was no fraud shown; that ·the purchase by Carlton at the execution sale, under the .Madden judgment and the assignment to John M. Hall, and ·the judgment of Allen & Co. and their redemption under ·it, with their deed, were all valid; that the complainant, :Hare, had never offered to redeem from any one under his ·own judgment; that the claim of Swinson to the lands pur-·chased by him at the federal sale was superior to either; and ·that the complainant was entitled only to the southeastquar-·ert of section 35, not contested. A decree was made, adjust-ing their rights accordingly and quieting titles amongst them.

The complainant, Hare, and also Allen & Co. appealed.. First, as to the appeal of Hare:

1. EXECU-
TION:
*Venditioni*
*exponas.*

It is quite evident that his claim to the homestead is sub-- ordinate to that of Swinson, who purchased it under an older judgment, the lien of which had never expired. The- levy of the execution under Swinson's judgment had been made in the life time of John B. Hall, and the *venditioni* *exponas* after his death was permissible. So directly ruled in the case of *Barber v. Peay, Ad'r, 31 Ark., 392.*

The remaining question in his appeal is, did the chancellor· err in failing to find such fraud in the conduct of the Halls, and in Allen & Co., and their agents, as would authorize the court to allow to complainant the benefit of his own pur-- chase on execution upon repayment to them of whatever sums may have been, advanced by John M. Hall, or by Allen & Co., to satisfy the purchase under the Madden judgment..

It is very true that, in equity, fraud need not be shown by direct and positive proof. Circumstantial facts may be· sufficiently strong to raise in the mind of a chancellor a con-- viction that fraud has been committed, but they must be- more than sufficient to excite a suspicion. They should induce belief. Courts of equity more readily act upon cir-- cumstantial evidences of fraud than do courts of law, but the line between them is not well defined. In neither· courts, says Mr. JUSTICE STORY, is it insisted that the proofs· of fraud should be positive and express. Each deduces it from circumstances affording strong presumptions; but: courts of equity will sometimes grant relief, upon the· ground of fraud established by presumptive evidence, which· courts of law would not always deem sufficient proof to justify a verdict at law, In this sense, he says, Lord Hardwick's· remark is to be understood, that "fraud may be presumed from the circumstances and conditions of the parties con-- tracting, and this goes further than the rule of law, which is, fraud must be proved, not presumed." Nevertheless it.

must be sufficient to satisfy the mind of the chancellor—
"sufficient to overcome the natural presumption of honesty
and fair dealing." It is neither desirable nor safe to make
the rule any more definite. See *Eq. Jurisprudence, secs.
190, 190 a.*

There is nothing to countervail the positive testimony
that John M. Hall paid the purchase money on the bond of
Carlton with his own means, and not with those of John B.
Hall. There was only a suspicion that he was too poor, but
no positive proof, even of that. Besides he seems to have
had friends of ability to aid him. The natural presumption
of honesty and fair dealing is not overcome by the suspicion
of his poverty.

It is positively shown that Allen & Co. acted in good faith
in obtaining the judgment in vacation. The debt was an
honest one, actully due from John B. Hall, and they were
attempting to collect it by due diligence, and by what they
may well have believed to be lawful means. They were
striving for a preference, as they might honestly do.

It does arouse some suspicion that the draft which Carl-
ton gave John M. Hall upon the redemption was never pre-
sented for payment. It would have been paid if presented.
The Messrs. Allen & Co. expected it to come in, and stood
ready to pay it. There was certainly no collusion on their
part to consider it a sham. But it was not the duty of the
chancellor, we think, to cast about for plausible or proba-
ble reasons for the failure to present it, or to declare the
whole transaction fraudulent *ab initio*, on failure to find any.
The draft was John M. Hall's own. No one else was inter-
ested in it. We cannot say that, because men generally are
in haste to receive money due them, the failure to seek it
implies dishonesty. There may have been honest reasons
arising from past transactions, and existing conditions of
business, between John M. and the firm of Allen & Co.
which induced him to decline the presentation of the draft.

But that would not deprive Allen & Co. of the benefit of
their purchase to as full an extent as if the draft were paid.
They had already in legal effect paid $4,000 for the redemp-
tion, in the credit of their debt. We approve the finding of
the chancellor, to the effect that fraud was not satisfactorily
shown.

2. Judge-
ment by
confes-
sion before
clerk, void

In this connection, another point, independent of fraud,
gives rise to more difficulty. The question presents itself,
was the judgment in vacation of any validity to afford the
basis of a redemption? And if not, were Allen & Co. enti-
tled to their deed from the sheriff? By the revised statutes
and down from the earliest periods of our State govern-
ment, such judgments might have been taken, before the
adoption of the code of civil practice. They were sus-
tained by the courts as ministerial acts, and were common in
practice. See *Gould's Digest, Ch., 133, sec. 140; Pick-
ett & Gregg v. Thurston et al, 7 Ark., 399.* The civil code
of 1868, however, in providing for judgments by confes-
sion, omitted this mode of obtaining or suffering them—
providing that the person must appear in *a court* of compe-
tent jurisdiction. There is no express repeal of the former
act, yet we are of opinion, from the nature and scope of
the code itself and the language of this particular part, that
the legislature had it in view to cover all modes of taking
judgment by confession, and to drop the former mode of
taking them before the clerk in vacation, and that now the
practice is not proper. The judgment was void.

But it does not follow that the deed afterward obtained
from the sheriff was also. That was not made by virtue of
a levy under the void judgment, but upon the levy made un-
der the Madden judgment. John M. Hall would have been
entitled to the deed if there had been no attempt to redeem.
He might have resisted an attempt to redeem. Hare might
have sued out execution on his own judgment, and redeemed
from him regardless of Allen & Co. Nothing of the kind

Hare v. Hall, et al.

was done.   The  transfer  of  the  certificate of purchase to
Allen & Co. seems  to have been  voluntary.   John M. Hall
does not question the right to the  deed, and Hare cannot.

It is insisted for the latter, however,  that  the  supposed
efficacy of the judgment by confession, deterred Hare from
attempting the single  redemption  from  John M.  Hall.   If
this were so, it would seem to us only the misfortune which
followed his  misapprehension  of  the law.   But  it  is not
plain that he was thus deterred.   He obtained his judgment
(in the name of Williams & Sons)  on the sixteenth  day of
November, 1874.   Carlton had then bought under the Mad-
den judgment,   Hare  might  have redeemed them without
any, even apparent, impediments, and on, afterward,  until
the fifteenth day of July, 1875, when Allen & Co. took out
their execution and made the apparent redemption.   He was
an  older  judgment  creditor  than  the Allen firm, and had
slept considerably upon  his  rights.   It was laches  to some
extent, imputable under the statute, for although he did not
absolutely loose his right to redeem, he  lost  the preference
of age.   He might, however, as the redemption of  Allen &
Co.  was not valid *as such* have  made the redemption within
the year, but took no formal steps to  do so,  by regular ap-
plication  for  the  purpose  and  legal  tender.   He has no
equity against Allen & Co. to cancel their deed  or  redeem
from them.

The appeal of  Allen & Co.  on their part against Swinson
presents no merit.   They stand upon the Madden judgment
and the  deed under it.   Both  the  levy  and  deed  under
which they claim excepts the homestead tract.   That is all
which the decree gives Swinson, and he is clearly entitled to
it under the marshal's deed.   Allen & Co. keep all the rest.
they claim.

All the plaintiff can claim he might have taken without let or
hindrance, the southeast of section thirty-five. The bill would
most properly have been entirely dismissed as to him at his.

3. REDEMP-
TION:
No pri-
ority in
right of
creditors

·cost.　He cannot complain that the chancellor, on his own :application, quieted his title to a tract which no one else ·claimed.　We think the chancellor properly adjusted the ,rights of Swinson and Allen & Co., giving the former the ·homestead and the latter all the other lands claimed by ·them under the certificate of purchase to Carlton, and the :sheriff's deed under the Madden execution.