THOMAS A. MARSHALL

v.

STEPHEN B. MOORE.

1. STAY OF EXECUTION — *levy on real estate.* The stay of an execution, levied upon real estate, does not release the lien of the judgment on other real estate.

2. JUDGMENT — *assignment* — *satisfaction.* The payment of the amount of a judgment by a purchaser thereof, and its assignment to him, does not operate as a satisfaction of the judgment. Nor does the agreement that he shall retain money of the judgment debtor in his hands, for its satisfaction, operate as a satisfaction, although he fails to do so and pays the money to the judgment debtor.

3. STAY OF EXECUTION — *junior judgments.* The stay of an execution expiring before junior judgments are obtained, can in nowise prejudice the rights of the junior judgment creditors.

4. ATTORNEY — *assignment of judgment.* When an attorney assigns his clients' judgment, and they received the money, it will be presumed that the assignment was made by the authority of his clients, or that they had ratified the act.

5. EXECUTION — *former levy.* It is irregular to issue an *alias* execution and have it levied on other property, and have it sold before a former levy is disposed of by sale or otherwise. Plaintiff should sue out a *venditioni exponas*, to have the property already levied upon sold, before a new levy and sale is made.

6. SALE OF PROPERTY — *two funds.* If a judgment is a lien upon several parcels of property, out of a portion of which others have satisfied junior judgments, or which has been purchased *bona fide* of the debtor, and a portion is free from the lien of the other judgments, the judgment creditor must first resort to the latter fund for satisfaction of his judgment.

WRIT OF ERROR to the Circuit Court of Coles county; the Hon. CHARLES H. CONSTABLE, Judge, presiding.

This was a bill in chancery, brought by Stephen B. Moore, against Thomas A. Marshall and Isaiah H. Johnson, to the May term, 1862, of the Coles Circuit Court.

It appears that in the fall of 1858, T. & J. W. Johnson & Co. recovered a judgment against Usher F. Linder, for the sum of $345.85, upon which an execution was issued and placed in the hands of the sheriff for collection; it was levied upon lot.one, a part of the E ½ N. E. Sec. 10, T. 12, R. 9 E.; also lot ten, in E. C. Banks' addition to the town of Charleston, which was afterwards

offered for sale, but was not sold for want of bidders. The execution was also, afterwards, levied on lot ten, in Banks' addition to Charleston, and lot one in Jones' addition to North Charleston, which were also offered, but were not sold for want of bidders.

It further appears, that a short time before the lots last levied upon were offered for sale, Linder, Marshall, and Johnson & Co.'s attorney, entered into an arrangement, by which it was understood that Marshall who owed Linder for property which he had purchased of him, should retain of the amount a sufficient sum, and see it applied to the satisfaction of the judgment; and the execution was to be returned and stayed for one year. The execution was accordingly returned; after the expiration of the year, the attorney of Johnsons called upon Marshall and demanded payment, but he refused, alleging that in settling with Linder he had forgotten the agreement, and had paid Linder, and that he was then in Marshall's debt. After some negotiation, it was agreed that Marshall should take an assignment of the judgment, so as to retain a lien upon the land; when Marshall paid to the attorney of Johnsons the full amount of the judgment, and the attorney assigned it to him.

At the April term, 1860, of the Coles Circuit Court, one James Miller recovered a judgment for $487.64, and R. S. Cunningham recovered a judgment for $570.25 against Linder. At the October term, 1860, John Monroe recovered a judgment for $214.50, and at the May term, Jacob I. Brown recovered a judgment for $174.40, and H. B. Warley a judgment for $554.85 against Linder.

Miller had issued and levied an execution, under his judgment, on lots one and two, in Jones' addition to North Charleston, and he purchased them, on the 14th of July, 1860, at sheriff's sale. Linder did not redeem from this sale, but Brown caused an execution to be issued, on his judgment, on the 13th of July, 1861, which was placed in the hands of the sheriff, and on the 15th of the same month Brown sold and assigned his judgment to G. W. Teel, who caused the execution to be levied on lots one and two, sold under Miller's exe-

cution, and, as a judgment creditor, redeemed the lots from Miller's sale, and had them offered and became the purchaser at the sheriff's sale, and took a certificate of purchase, which he assigned to defendant in error, which not being redeemed, he obtained a sheriff's deed for the same.

On the 28th of May, 1860, Cunningham sued out an execution, on his judgment, under which he, on the 11th of August following, sold lots three, four and five, in Jones' addition to North Charleston, as the property of Linder. He failed to redeem. On the 29th of July, 1860, Monroe sold and assigned his judgment to defendant in error, who, on the 9th of August following, caused an execution to be issued and levied on lot five, in Jones' addition to North Charleston, and, as a judgment creditor, on the 12th day of that month, redeemed it from Cunningham's sale, and had it sold, when he purchased it, which not having been redeemed, he procured a sheriff's deed therefor.

Warley, on the 8th of August, 1861, assigned his judgment against Linder to defendant in error, on which an execution was issued and levied on lots three and four, on the 12th day of August, 1861, and as judgment creditor, he redeemed from the sale to Cunningham, and it was again sold, and bid off by Moore; and not having been redeemed, he received a sheriff's deed for the same. And after having his deeds recorded, he took possession of lots one, two, three, four and five, and was, when the injunction issued, still in possession.

It appears that Linder, on the 15th day of April, 1859, sold to Marshall 630 acres of land, upon which the Johnson judgment was a lien, for the sum of $9,000; Marshall agreeing to pay certain judgments against Linder, including the Johnson judgment. And on the 6th day of February, 1859, Linder sold 160 acres of land to Thomas B. Trower, for $3,000, upon which the Johnson judgment was a lien.

Afterwards, on the 27th of October, 1862, Marshall, as assignee of the judgment in favor of the Johnsons, caused an execution to be issued and placed in the hands of the sheriff, who levied it upon lots one, two, three, four and five, in Jones' addition to North Charleston, without disposing of the levies

under the former execution. A temporary injunction was issued to stay the sale of these lots.

At the September term, 1863, of the Coles Circuit Court, a hearing was had on a demurrer to the bill filed by Marshall; the bill having been taken as confessed against defendants John-sons; which was overruled, and leave given to Marshall to answer the bill, which he declined to do, but abided by his demurrer; whereupon the court rendered a decree perpetually enjoining a sale under the execution. To reverse that decree, Marshall brings the cause to this court by writ of error, and assigns for error the overruling the demurrer, and making the injunction perpetual.

Mr. M. C. McLAIN, for the Plaintiff in Error.

Messrs. O. B. FICKLIN, and JOHN SCHOLFIELD, for the Defendant in Error.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

It is insisted that extending the time for the payment, and the stay of execution, rendered the judgment in favor of the Johnsons dormant, and that it was postponed to other and junior judgments. In support of this position, the case of *Ross* v. *Webber*, 26 Ill. 221, is cited by defendant in error. That case related to personal property under execution, in the hands of the sheriff, and whilst it was so in his hands, the creditor agreed to stay the execution for the period of six months, without a sale. Afterwards, and whilst the execution was in the sheriff's hands, he received another, in favor of a different plaintiff, and against the same defendant, which continued in his hands after the prior execution had expired. It was held in that case, that by the stay of the former execution it became dormant, and lost its priority of lien, and the property became liable to sale for the satisfaction of the junior execution.

The question is then presented, whether the same rule applies

to the lien of a judgment on real estate.    We think it does not apply.    As to the lien on personal property it is created alone by the execution, whilst the lien on real estate is created by the recovery of the judgment, and the adjournment of the court. With real estate, a junior judgment creditor may sell, subject to the lien of an older judgment.    But such is not the case with personal property, as the levy is *prima facie* a satisfaction of the execution, and there can be no levy unless the property passes under the control of the officer.    When he has seized it under execution, it cannot be taken from his hands and sold under a different execution, junior in date.    Nor can an officer sell such property unless it is present, under his control, when the sale is made, that it may be seen by purchasers, and a delivery made after the sale.    Hence an execution coming to the hands of an officer, cannot be levied on property seized and in the hands of a different officer.    An officer may, however, sell under the first execution, and apply any surplus to the satisfaction of the junior execution in his hands.    Not so with real estate, as it may be sold on a junior judgment, subject to prior liens.    If, therefore, a stay of the sale of personal property could be made beyond the lifetime of the execution, it might be used as the most effectual means of hindering and delaying creditors in the collection of their debts.    It could be used as a most potent means of holding creditors at arm's length, and thus perpetrating great fraud.    Any extension of time or stay of execution on real estate, to a time short of the statutory period of limitation of a judgment lien, may be made without prejudice to the creditor.

It is again contended that the payment of the amount of the judgment, by Marshall, to the plaintiff's attorney, operated as a satisfaction, notwithstanding the assignment of the judgment. When it was agreed by the parties that Marshall should retain, of the sum he owed Linder, a sufficient amount to pay the judgment, and that the sale should be stayed for a year, none of the parties supposed that they thereby satisfied the judgment, nor did the agreement have that effect.    Nor did the withdrawal of the money by Linder from the hands of Marshall,

in violation of the agreement, in anywise affect the judgment or the rights of plaintiffs in execution. They might then have sued out a *venditioni exponas*, and have sold the property, and if insufficient to satisfy the judgment, proceeded against other property subject to the judgment lien to obtain satisfaction.

It may be said, that Marshall, by his agreement to retain a sufficient sum of what he owed Linder, and to pay the debt, became liable to pay the judgment. It cannot be said that he agreed to do so gratuitously. It appears that the agreement was, that the execution was to be stayed for one year. There was only an agreement for a stay of proceedings, and not for a satisfaction, but the right was implied that a sale might be made at the expiration of the time, if the money was not paid. Otherwise, the execution would have been returned satisfied, and Marshall looked to for payment.

The agreement not to sell was made, and the execution returned, on the 24th day of March, 1859. And it will be observed, that the judgments, under which defendant in error claims, were not recovered until the April term, 1860, and afterwards, more than one year after the agreement was made to stay the execution. Had the parties come together at any time before these judgments were obtained, and rescinded the contract, could it be contended that any injury had been done to any of Linder's creditors? If so, how, and upon what principle? And it may be asked, in what do the cases differ? The money designed for the payment of the judgment had been withdrawn by Linder from Marshall's hands, without any objection by him, and it was afterwards virtually assented to by the attorney of the plaintiffs. Had the money been paid under the same circumstances by Marshall, and the assignment made to him before the April term, 1860, it would hardly be insisted that Marshall had not acquired the benefit of the judgment and its lien. And when the agreement had failed, previous to that time, and the money was paid, and the assignment made afterwards, we do not perceive that Marshall acquired any less rights. He had the right, after Linder withdrew his money, to purchase the judgment and take an assignment.

It is also insisted that the attorney was unauthorized to assign the judgment, unless he had a special authority. Whether he had authority or not, can, we think, make no difference, as it may be safely inferred that plaintiffs in execution, by receiving the money, ratified his act. They seem to have obtained their money, and are making no complaint or objection to Marshall using the execution to collect the judgment. We are, therefore, of the opinion that Marshall, by the assignment, acquired an equitable title to the judgment, and has the right to control the process of the court for its collection.

It is, however, true that it was irregular to sue out execution and levy on property until the former levy had been disposed of, by sale or otherwise. The regular course would have been to have sued out a *venditioni exponas*, and sold the property; or have the levy set aside, if any reason for doing so existed, before he could make a new levy. To proceed otherwise is irregular, and entitles defendant in error to have the last levy set aside, and to have the former levies disposed of before his property can be taken in execution.

Again, the bill alleges there was other property subject to levy and sale, not incumbered, out of which Marshall could have satisfied this judgment. If there is any property belonging to Linder, subject to execution and unincumbered, Marshall is bound, in equity, to exhaust it before he resorts to the property purchased by defendant in error. *Wise* v. *Shepherd,* 13 Ill. 41; *Hurd* v. *Eaton,* 28 Ill. 122. The decree of the court below is, therefore, reversed, and the cause remanded, with instructions to require Marshall to exhaust the levy already made, on the former execution, and to resort to any other property of Linder, subject to execution, free from incumbrance, before he can levy and sell the property purchased by defendant in error, under an execution against Linder, for the satisfaction of the judgment.

*Decree reversed.*