CAROLINE SMITH, Admx.

*v.*

ALBERT J. JACKSON.

*Filed at Ottawa November 27, 1894.*

1. APPEAL—*decree that master's deed is void, involves freehold.* A decree which finds that a master's deed made in pursuance of a foreclosure sale is void and conveys no title, involves a freehold, and an appeal lies from such decree directly to the Supreme Court.

2. TENDER—*of solicitor's fee provided for in mortgage.* Where a mortgage stipulated for a reasonable solicitor's fee, a tender of a sum suggested by the attorney who files the bill to foreclose, in addition to principal and interest due, will be sufficient.

3. REDEMPTION—*from judicial sale by a stranger.* Redemption of land from a judicial sale may be made by one not having a legal right to redeem, provided the holder of the certificate of sale accepts the redemption money.

4. SAME—*void execution—effect of, on redemption.* The payment of money by an executor to redeem from a master's sale, under an execution which is void because when it was issued the executor's letters were not recorded as required by statute, creates no lien upon the land, although the sheriff records a certificate of redemption.

5. SAME—*payment of judgment does not give such redemption validity.* The holder of the master's certificate of sale does not, in such case, accept the redemption money by subsequently paying the judgment on which the execution was issued, and by advising the sheriff to return the redemption money.

6. SAME—*void redemption does not affect master's certificate and deed.* Such an attempted redemption does not render the certificate of sale, and the master's deed subsequently executed to the holder thereof, void.

APPEAL from the Circuit Court of Whiteside county; the Hon. JAMES SHAW, Judge, presiding.

Mr. JOHN G. MANAHAN, for the appellant :

The execution issued on the Page judgment was void. *Brown* v. *Parker,* 15 Ill. 307; *Meyer* v. *Mintonye,* 106 id. 414.

The sheriff had no authority to place on record a certificate of redemption under said execution, and the same would be treated as a nullity. *Durley* v. *Davis,* 69 Ill. 134.

The original purchaser might insist on a deed, notwithstanding the defective attempt at redemption. *Borders* v. *Murphy*, 78 Ill. 86.

The redemption sought to be made by Page's attorney was purely statutory, and could be enforced only by strictly following the statute. *Durley* v. *Davis*, 69 Ill. 134.

The redemption sought to be made by Smith was in the exercise of the common law right to pay off the prior incumbrance on the land of which he had become the owner in fee, and in reference to which he became the representative of Johnson Jacobs, the original mortgagor. Jones on Mortgages, 1055.

Jacobs' right to redeem said premises from the Forbush mortgage, for the due enforcement and protection of his own interest, is unquestionable. 2 Story's Eq. Jur. sec. 1023; *Pardie* v. *Van Auken*, 3 Barb. 534.

Mr. C. L. SHELDON, and Mr. O. F. WOODRUFF, for the appellee:

Where purchasers at a sale receive the money that is deposited in redemption of the same by a judgment creditor, they are estopped from questioning the right of the creditor to redeem, and no one else is entitled to question whether redemption was effected or not. *Meyer* v. *Mintonye*, 106 Ill. 414; *Massey* v. *Westcott*, 40 id. 160; *Pearson* v. *Pearson*, 131 id. 464.

Where a party under a void execution deposited with the sheriff a sum sufficient to redeem from a prior master's sale of the premises, which is accepted, the sole object being to extinguish the prior purchaser's title under his purchase and to enable the redemption creditor to acquire the title by a sale under his execution, which fails on account of his execution being void, the court will have no right to hold the transaction as a purchase and assignment of the prior purchaser's certificate of purchase, as that would be to make a contract for the parties. *Meyer* v. *Mintonye*, 106 Ill. 414.

The mere act of redeeming from a judicial sale may be done by one not having the right to redeem, as well as by one having such right, provided the purchaser sees proper to accept of the amount of the incumbrance, and the effect of such redemption will be to divest all the rights acquired under the sale. *Meyer* v. *Mintonye, supra; Borders* v. *Murphy,* 78 Ill. 81; *Bennett* v. *Mining Co.* 119 id. 9.

Mr. JUSTICE BAILEY delivered the opinion of the court:

This was a suit in chancery, brought by Albert J. Jackson, against Adam Smith and others, to foreclose a mortgage. The facts disclosed by the record, about which there seems to be little, if any, dispute, are as follows : On the 10th day of March, 1884, Johnson Jacobs, being the owner in fee of the north-east quarter of section 36, in township 22, of range 6, in Whiteside county, borrowed of Jonathan C. Forbush the sum of $4500 for five years, and secured the same by mortgage upon the land above described, the mortgage providing, among other things, that in case of a bill to foreclose the same the mortgagor should pay all reasonable solicitor's fees, and all costs and expenses in and about the foreclosure suit. July 26, 1885, he borrowed the further sum of $700, of John W. Martin, and secured the same by a second mortgage on the same premises, and afterwards conveyed the land, subject to the two mortgages, to Henry Johnson.

In 1887 Martin filed his bill to foreclose the junior mortgage, making Johnson Jacobs and wife, Henry Johnson and wife, and William C. Page and Margaretta Hummellman, two judgment creditors of Johnson Jacobs, parties defendant. Forbush, the senior mortgagee, does not seem to have been made a party. The suit, however, resulted in a final decree of foreclosure, under which the entire quarter section of land was sold by the master February 3, 1888, for $859.02, Martin becoming the purchaser.

On the 25th day of April, 1889, Adam Smith recovered judgment by confession in the circuit court of Whiteside county, against Henry Johnson, for $954 and costs. On the 14th day of May, 1889, which was after the expiration of fifteen months after the foreclosure sale to Martin, Smith paid Martin the amount of his bid and interest, and received from him an assignment of his certificate of purchase, and on the same day, it being claimed that no redemption from the sale had been made, the master executed and delivered to Smith a master's deed conveying the land to him.

Smith, after obtaining the master's deed, sold and conveyed the south half of the quarter section to Henry Fulfs for $4800, and out of that sum paid $2300 on the Forbush mortgage. He also paid and satisfied the Hummellman judgments, amounting to near $500. He subsequently sold and conveyed the north half of the quarter section to Henry Juilfs for $3000, and received from Juilfs for the purchase money his six promissory notes, for $500 each, secured by mortgage on the land sold. None of these notes are paid, and all of them remained in Smith's hands until his death, and are now in the hands of his administratrix.

Matters being in this situation, Albert J. Jackson, on April 10, 1893, purchased and obtained an assignment to himself of the Forbush note and mortgage, and on April 17, 1893, he filed the present bill to foreclose the mortgage, making Smith, Jacobs and others parties defendant. Smith thereupon tendered to Jackson's solicitor the amount, principal and interest, then due on the note and mortgage, together with the costs then accrued, and $75 solicitor's fees, the amount of the money so tendered being $2720. This tender, the solicitor, by direction of Jackson, declined to accept, and Smith, on April 29, 1893, brought the same into court and placed it in the hands of the clerk of the court for Jackson, and the clerk de-

posited it in the bank of which Jackson is an officer, where it has since remained.

Jackson, having declined to accept the tender, proceeded with his foreclosure suit.  Smith answered the bill and filed a cross-bill, praying to redeem from the Forbush mortgage, for his own protection as grantor of the two eighty-acre tracts, and as mortgagee of the north eighty.  By his cross-bill he claimed title in fee to the land under the master's deed, and set out his subsequent conveyances of the two eighty-acre tracts, and the execution to him, by the purchaser, of the mortgage on the north eighty for the purchase money, and also set out his tender to Jackson of the amount due on the Forbush mortgage, together with costs and solicitor's fees, and prayed that the tender might be decreed to be sufficient, and that he might be subrogated to the rights of the mortgagee, and a general prayer for relief.

Jackson answered the cross-bill, denying the validity of the master's deed, and denying Smith's title thereunder.  It alleged that on April 25, 1889, which was more than twelve and less than fifteen months after the date of the sale under the Martin foreclosure, the executor of Page made a pretended redemption from that sale, by causing a pretended execution to be issued on the judgment recovered by Page, in his lifetime, against Johnson Jacobs, and placing the same in the hands of the sheriff of Whiteside county, and causing the same to be levied on the quarter section of land in question, and by depositing with the sheriff, at the same time, the sum of $943.47,—the amount at that time necessary to redeem from the sale ; that the sheriff placed a certificate of redemption on record, and that Smith, the assignee of the certificate of sale, accepted the redemption money, and that upon such acceptance the certificate of sale became of no force and effect and absolutely null and void, and that after these redemption proceedings, the master, in ignorance thereof, executed the master's deed to Smith,

The answer admits that the redemption proceedings were illegal of themselves, but claims that the redemption money having been deposited with the sheriff by the executor of Page, and having been accepted by Smith, the assignee of the certificate of sale, all rights under the foreclosure sale were extinguished, and the master's deed was consequently illegal and void, and conveyed no title to Smith.

The suit coming on to be heard on pleadings and proofs, it was shown by the evidence, among other things, that on the 25th day of April, 1889, Page being then dead, his executor, without having first caused his letters testamentary to be recorded in the circuit court as provided by statute in such cases, sued out an execution on the judgment recovered by Page, in his lifetime, against Jacobs, and placed the same in the hands of the sheriff of Whiteside county, and caused the same to be levied upon the land in question, and at the same time undertook to redeem from the Martin foreclosure sale by depositing with the sheriff the sum bid at that sale, and interest.   Nothing further seems to have been done in the matter of the redemption, unless it was the recording of a certificate of redemption by the sheriff.   The controversy here is over the question as to whether Smith is shown to have accepted the redemption money in such way as to make the redemption binding upon him, and that question will be considered further on.

The court, at the hearing, found that all the material allegations of the original bill were proved, and that the equities of the case were with the complainant in that bill, and that the cross-bill was without equity and should be dismissed.   The court also found, that at the date of the decree there was due the complainant on the mortgage the sum of $2848.68, and the further sum of $250 for solicitor's fees, making $3098.68, and a decree was rendered in his favor for that amount and costs, and for a sale of the north half of the quarter section of land there-

for, and dismissing the cross-bill for want of equity. While the suit was pending in the circuit court, Adam Smith died, and his administratrix was substituted as a party in his stead. To reverse the decree the administratrix now appeals to this court.

A motion is made by the appellee to dismiss the appeal for want of jurisdiction, the contention being that no freehold is involved in the case, and that the appeal, therefore, should have been taken to the Appellate Court. We think it apparent from the statement of the case already made, that a freehold is involved, within the meaning of the statute in relation to appeals. The controversy, as made by the cross-bill and the answer thereto, is upon the validity of the master's deed,—an instrument which purports to convey to Smith the land in fee,—and that controversy seems to have been decided by the court in favor of the defendant to the cross-bill, thereby holding that the deed is void, and so conveys no title. This presents a case in which a freehold is involved, within the rule laid down in *Sanford* v. *Kane*, 127 Ill. 591. The motion to dismiss must therefore be overruled.

The principal controversy in the court below seems to have turned upon the sufficiency and effect of the tender made by Smith after the complainant had filed his bill. No claim is made that the amount tendered was not sufficient to cover the principal and interest then due on the mortgage and the costs then accrued, besides the $75 tendered for solicitor's fees, but it is contended that the amount tendered for solicitor's fees was not adequate. As has already been seen, the mortgage, in stipulating for the payment of such fees, fixed no amount to be paid, but merely stipulated for the payment of reasonable solicitor's fees. It seems clear that, under this provision, the amount the defendant was required to tender was a sum which would constitute a reasonable fee for such services as the solicitor had then performed, and not such fees as he might become entitled to by carrying the suit

to final decree. If the tender had been accepted, the suit would have then and there terminated, and no further services by the solicitor would have been required.

It is shown by the testimony of several competent witnesses that $75 was a reasonable solicitor's fee for filing the bill and for such services in the case as had then been rendered, and this evidence does not seem to be contradicted. Besides, the evidence tends to show that Smith's solicitor, being about to tender $50 for solicitor's fees, went to the complainant's solicitor and informed him that he proposed to include that sum in the tender, and was told by the complainant's solicitor that the fee ought to be $75, and in conformity with that suggestion the sum of $75 was tendered. Under these circumstances it can not be properly claimed, we think, that a sufficient sum was not tendered for solicitor's fees.

It is insisted, however, that the attempted redemption under the Page judgment had the effect of rendering the certificate of sale void and *functus officio*, and that the master's deed was in like manner void, and that Smith consequently had no interest in, but was a mere stranger to, the land, and was in no position to make a tender which the complainant was bound to regard or accept.

The thirty-seventh section of the statute in relation to judgments, etc., provides that the collection of a judgment of a court of record shall not be delayed or hindered by the death of the person in whose favor it shall be, but his executor may cause his letters testamentary to be recorded in such court, after which execution may issue and proceedings be had in the same manner as if the judgment had been rendered in the name of the executor. (Rev. Stat. chap. 77, sec. 17.) In this case, the executor failed to have his letters testamentary recorded, and it is admitted, both by the pleadings and by counsel in their arguments, that the execution was improperly issued, and was consequently void.

But it is claimed that Smith accepted the redemption money, and that, having done so, the redemption must be deemed to be effectual, even though the party making it had no right to redeem. It is doubtless the rule that the mere act of redeeming from a judicial sale may be done by one not having the right to redeem as well as by one having the right, provided the purchaser sees proper to accept the redemption money, and the effect of the redemption will be to divest all rights acquired under the sale. *Pearson* v. *Pearson,* 131 Ill. 464; *Meyer* v. *Mintonye,* 106 id. 414; *Massey* v. *Westcott,* 40 id. 160.

The question then is, whether, in point of fact, Smith is shown to have accepted or received the redemption money. His own testimony is to the effect that he never accepted it and that no part of it ever came to his hands, but that, on the contrary, he paid to the sheriff the amount appearing to be due on the execution by virtue of which the redemption was attempted to be made. The sheriff testifies that he held the redemption money in his own hands for some time, and finally returned it to the attorneys for Page's executor, from whom he received it, and we find no evidence tending to show that any other disposition of the redemption money was made.

But it is urged that, while this may all be true, the disposition which was made of the money was virtually for the advantage of Smith, and that he must therefore be deemed, in law, to have accepted it. That conclusion is sought to be reached this way: It is said that after the redemption was made by the execution creditor the execution could be paid off only by paying the amount of the judgment and costs, plus the redemption money, and that as Smith undertook to pay off the execution, the return of the redemption money to the redeeming creditor was really a payment in Smith's interest and for his benefit, and that he therefore should be charged with the money, the same as though it had been paid over to and received by him.

The fallacy in this argument lies in the fact that, the execution being void, (*Meyer* v. *Mintonye, supra,*) neither it nor the redemption money paid constituted any lien on the land. The judgment upon which the execution was attempted to be issued was a lien, and Smith was at liberty, in aid of his title under the certificate of purchase, to pay that lien off, and his paying to the sheriff the amount of that judgment and costs was, under the circumstances, only a satisfaction of that lien, and it was by no means necessary, in order that its satisfaction should be effectual, that the redemption money should also be repaid. Smith was in no way placed under any· obligation to repay the redemption money, nor does it appear that he undertook to do so, but the return of that money by the sheriff to the redeeming creditor was only making the proper disposition of it, in view of the fact that the attempted redemption had proved a failure. The money was not refunded to the attorneys of the executor at Smith's instance, nor in discharge of any obligation on his part, and it can not be seen that it was so disposed of as to make him in any way chargeable with it.

Some reliance is placed upon the fact, which some evidence in the record tends to show, that Smith's solicitor, who also acted, to some extent, as the private adviser of the sheriff, on being asked by the sheriff as to what disposition had better be made of the redemption money, replied advising its return to the attorneys of Page's executor, from whom he had received it, and that the sheriff returned the money as advised. It does not appear that in giving this advice the solicitor was acting on behalf of Smith. But even if he was, the case would not be altered. If the sheriff had applied to Smith in person for advice as to what disposition should be made of the money, and Smith had said to him that he had better return it to the parties from whom he had received it, Smith would have incurred no responsibility by giving such advice. He would have merely advised the

sheriff to do what, under the circumstances, the law required him to do.

We are of the opinion that Smith had such interest in the mortgaged premises as entitled him to make a valid tender of the amount due on the mortgage, and that the tender made was sufficient, and that the only relief to which the complainant is now entitled is to avail himself of the tender. The circuit court, in holding the contrary, reached an erroneous conclusion. The decree will therefore be reversed, and the cause will be remanded, with instructions to enter a decree dismissing the original bill at the costs of the complainant, and granting the prayer of the cross-bill.

*Decree reversed.*