## William G. Adams v. Margaret Connelly.

### Gen. No. 4,438.

1. PROMISSORY NOTE—*what evidence of title to.* Possession of a promissory note indorsed in blank, is deemed *prima facie* evidence of title thereto.

2. VARIANCE—*how question of, raised.* In order to avail of an alleged variance upon appeal, a party must have specifically raised such point upon the trial of the cause.

3. JUDGMENT—*what title passes by assignment of.* The assignment of a judgment vests in the assignee not a legal but an equitable title, and execution thereon must, notwithstanding the assignment, issue in the name of the plaintiff in the action.

4. EXECUTION—*in whose name should' issue.* If the plaintiff dies subsequent to the assignment of a judgment by him, execution thereon should issue in the name of his personal representative.

5. LEVY—*what deemed abandonment of.* The issuance of a new execution is deemed to be an abandonment of a levy made under a previous one issued on the same judgment.

6. DECREE—*who may not question.* One having no lien against premises involved in a decree of foreclosure cannot raise technical objections to the validity of such decree.

Foreclosure proceeding. Appeal from the Circuit Court of McHenry County; the Hon. CHARLES H. DONNELLY, Judge, presiding. Heard in this court at the October term, 1904. Affirmed. Opinion filed March 8, 1905.

CHARLES S. NORTHROP and HORTON & BROWN, for appellant.

D. T. SMILEY, for appellee.

MR. PRESIDING JUSTICE FARMER delivered the opinion of the court.

Complainant filed a bill to foreclose a mortgage dated May 1, 1896, acknowledged August 13, 1896, recorded August 14, 1896, given by George V. Hankins and wife upon real estate in McHenry county to Richard I. Marr, to secure a note described in the bill as " a certain promissory note executed by George V. Hankins bearing even date herewith, payable to the order of Richard I. Marr, Novem-

ber 1, 1899, for $11,000 with interest at seven per cent. per annum." Afterwards the bill was amended by alleging that the mortgage set up in the original bill was given as further security for the note mentioned and that said note was secured by a mortgage executed by Hankins and wife to Marr on the same lands described in the mortgage mentioned in the original bill, dated and acknowledged May 1, 1896, and recorded July 13, 1896. The description of the note in the last mentioned mortgage differs from the description of the note in the one first mentioned only in that the mortgage recites that it, the mortgage, was given by Hankins and wife to secure the payment of "their" note payable to the order of the mortgagee and signed by said "mortgagors." The bill alleged that Marr had assigned the note and mortgage to complainant and that she was the legal holder and owner thereof. All defendants except appellant were defaulted. He answered the bill denying Hankins was indebted to Marr on the first day of May, 1896, or at any subsequent time in the sum of $11,000 or any other sum, or that he on that date executed the note mentioned in the bill as amended, but alleges Hankins executed the note August 13, 1896, and avers that it never was in fact delivered to Marr. The answer denies that Marr sold and assigned the note to complainant for a consideration, denies Hankins and wife executed the mortgage mentioned in the bill as amended to secure the note or any other sum, but alleges the mortgage was made as a mere sham to cloud the title to the lands therein described for the purpose of hindering and delaying the creditors of Hankins. The answer further denies that the mortgage acknowledged August 13th and recorded August 14th was given to secure any principal sum and interest, but alleges it was made on or about August 13th to secure the note of Hankins described in the bill as amended, which note the answer avers, though dated May 1, 1896, was in fact made on or about August 13th, and that said note and mortgage were made for the purpose of depositing the same as collateral security with a collateral note of Hankins for

$10,000 dated August 7, 1896, payable to his order two years after date and by him indorsed. The answer then alleges that August 4, 1896, Julius Hoag recovered in the Circuit Court of Cook County two judgments against Hankins, one for $1,667.50 and one for $343.14 and costs; that on the same day executions were issued to the sheriff of Cook County, and on August 6th, returned by him with indorsments, showing demand made upon Hankins for payment but no property found to satisfy them; that on August 6th, executions were issued on said judgments to the sheriff of McHenry County, Illinois, and August 7th levied upon the premises described in complainant's mortgage but afterwards returned unsatisfied, no sale having been made of the premises thereunder. The answer further alleges that Hoag, by written assignments November 25, 1896, transferred and assigned said judgments to Nottlemann and that Nottlemann June 21, 1898, in the same manner, assigned the judgments to appellant and that all of said assignments were duly recorded in the office of the clerk of the Circuit Court of Cook County. The answer further avers that on November 6, 1902, alias executions were issued on said judgments to the sheriff of McHenry County by virtue of which he, on November 10th, levied upon the premises described in complainant's mortgages, and November 29th sold the same, at which sale appellant purchased them for the sum of $2,737.56, received a certificate therefor from the sheriff and said alias executions were returned satisfied. This sale, appellant claims, gives him priority over appellee's mortgage. The cause was referred to the master in chancery to take the proof and report the same with his conclusions of both law and fact. The master reported that appellee was entitled to a decree of foreclosure for the amount of the note secured by the mortgage recorded July 13, 1896, and that said mortgage was a prior lien. He further reported the executions under which appellee claimed to derive his interest in the premises, were void, and that the sale thereunder gave the purchaser no interest in the lands. Exceptions to the report were by

the court overruled, the report of the master approved
and confirmed, and a decree of foreclosure entered in ac-
cordance therewith, from which decree this appeal is pros-
ecuted.

We have read all the evidence, but an intelligent analysis
of it would occupy more time and space than its value
would justify. Its weight, in our judgment, showed that
Hankins was indebted to McHie, with whom he was asso-
ciated in the Harlem race track, in an amount equal to or
greater than $11,000; that he executed a note on or about
May 1, 1896, for that amount payable to the order of Marr,
who was employed by both Hankins and McHie, and
secured it by the mortgage recorded July 13, 1896; that
the note and mortgage were delivered by Hankins to Marr,
who delivered them to McHie at Hankins' direction. Ac-
cording to the testimony McHie had nothing to do with
procuring the execution of another $11,000 note and the
mortgage acknowledged August 13, and recorded August
14, 1896. Hankins, so McHie testified, took this note and
mortgage to him, McHie, and asked him to take them and
give up the first note and mortgage. McHie took them to
his attorney for the purpose of getting his advice as to
whether he would be safe in doing so, and was advised by
his attorney not to give up the first note and mortgage, and
also to keep the second note and mortgage, until he got his
money, as " Hankins is going wrong and he may have some
purpose." This explanation of there being two mortgages
on the same premises, is much more reasonable and much
better sustained by the evidence than Hankins' explanation.
According to the evidence, the note was given to Marr for
McHie for a *bona fide* subsisting indebtedness and was
secured by a mortgage dated and acknowledged May 1, 1896,
and recorded July 13, 1896, upon which the decree of fore-
closure was rendered.

It is first contended that appellee not only did not prove
the allegations in her bill, that Hankins was indebted to
Marr when the note was executed and delivered to him, and
that Marr assigned and transferred said note to her for

a valuable consideration, but that it conclusively showed Hankins was not indebted to Marr, and that therefore a material allegation of the bill failed for want of proof. We do not think this objection good. While the bill alleged an indebtedness to Marr, for which the note and mortgage were given, the proof showed the indebtedness was to McHie, but the papers were made to Marr for McHie, and by Marr indorsed in blank and delivered to McHie. They were in the possession of appellee and produced by her before the master and this we are of the opinion made a sufficient *prima facie* case to authorize a decree. "Possession of a note indorsed in blank is evidence of title." Palmer v. The Nassau Bank, 78 Ill. 380, and cases cited; Morris v. Preston, 93 Ill. 215. Neither do we think there is any merit in the contention, that the note offered in evidence was not the note described in the mortgage. The mortgage was signed by both Hankins and wife, and in describing the note it was given to secure, referred to it as " their " note, and as signed by the "mortgagors." The note was in fact only signed by Hankins, but it is also described as " one note drawn to the order of Richard I. Marr, payable at 130 Adams Street, Chicago. on the first day of November A. D. 1899, with interest thereon at the rate of seven per cent." It appears to have been described with sufficient accuracy to authorize the mortgage being received in evidence as the mortgage given to secure the note introduced. Besides it may well be doubted if the objection made at the hearing before the master was sufficient to raise the question. The grounds of objection stated were, that the mortgage was " immaterial, irrelevant, and incompetent, and because it does not describe the note described in the bill of complaint." It has been held by our Supreme Court that when a party wishes to raise the question of a variance between the allegations and proofs, he must specifically point out the variance, so that the opposite party may amend his pleading and obviate the difficulty. Dorn v. Bissell, 180 Ill. 73; Dorn v. Farr, 179 Ill. 110. The master found and reported that the executions issued by the clerk

of the Circuit Court of Cook County on the Hoag judgments November 6, 1902, were void and the sale thereunder conferred no title or interest in the premises upon appellant. The decree of the court approves and confirms the master's report in all respects, but does not specifically mention the executions and sale under which appellant claims a prior lien. In the early part of the year 1902, and before the executions were issued, Hoag died. The certificates of levy and sale, under the executions introduced in evidence, recite that said levies and sale were made under executions issued out of the Circuit Court of Cook County November 6, 1902, in favor of Julius Hoag. It is contended by appellee that Hoag being dead at the time the executions were issued, the assignee of the judgments had no authority in law to sue them out, and that he took no interest in the premises by virtue thereof. The master reported it was stated by counsel for defendant on the hearing, that no right or interest would be claimed or made by virtue of the levies made under executions on August 7, 1896, if the levies made under the executions issued November 6, 1902, were found to be void.

The assignment of a judgment does not have the effect to vest the legal title in the assignee, but vests only an equitable interest. Yarnell v. Brown, 170 Ill. 362; Pearson v. Luecht, 199 Ill. 475. An execution must follow the judgment and issue in the name of the plaintiff in the judgment, Hobson v. McCambridge, 130 Ill. 367; and this, even though the judgment has been assigned. Elliot v. Sneed, 1 Scammon, 517. Section 37 of chapter 77, Starr and Curtis' Statutes, provides that the collection of a judgment shall not be delayed or hindered by reason of the death of the person in whose favor it was rendered, but the executor or administrator may cause his letters testamentary or of administration to be recorded in the court wherein the judgment is rendered, and execution may then issue in his name. In Brown v. Parker, 15 Ill. 307, it was held that an execution issued in the name of a deceased plaintiff was void, and it was there said: " Where either party dies be-

fore execution issues the judgment must be revived by *scire facias* or an execution must be sued out in the mode prescribed by statute." In Coran & Co. v. Pittenger, 92 Ill. 241, this language, substantially, was quoted with approval. The case of Meyer v. Mintonye, 106 Ill. 414, involved the validity of a sale made under an execution caused to be issued by the administratrix of a deceased plaintiff without causing her letters of administration to be filed in the court where the judgment was rendered, and without reviving the judgment by *scire facias*, and it was there held the execution and sale had under it were void. Smith v. Jackson, 153 Ill. 399, and Dinet v. Eigenmann, 80 Ill. 274, are to the same effect. It is argued by counsel for appellant that these cases are not applicable to the case here because in those cases there was no assignment of the judgments. We are unable to agree to this. The legal interest in the judgment remained in Hoag until his death and then passed to his legal representative. The Supreme Court in the cases above cited has not excepted from the requirements of the statute judgments assigned before the death of the plaintiff, and we can see no good reason why any such exception should be made. We are, therefore, of opinion appellant acquired no interest by virtue of the sale under executions issued in 1902. We are also of opinion the executions issued and levied upon the premises in 1896, during the lifetime of Hoag, could be of no avail to retain any lien thereby created, because the issuing of new executions would be an abandonment of the levy made under the former executions. If reliance had been placed upon the old executions and the levy made thereunder, a writ of *venditioni exponas* should have been issued and the premises sold under that writ. Marshall v. Moore, 36 Ill. 321; Babcock v. McCamant, 53 Ill. 214; Freeman on Executions, Sec. 50. Appellant having no lien against the premises described in the mortgage is in no position to raise technical objections to the decree.

The decree of the Circuit Court is affirmed.

*Affirmed.*