THE NORTH DAKOTA HORSE & CATTLE COMPANY V. SIVER
SERUMGARD.

Opinion filed July 17, 1908.

**Mortgages — Foreclosure — "Redemption."**

1. A "redemption" from the purchaser at a foreclosure sale by one not the mortgagor is a compulsory sale of the interest acquired by the purchaser at the foreclosure sale, and such redemption can only be enforced by one given that right by statute, and then only by pursuing the method prescribed by the statute conferring the right.

**Same — Redemption by Superior Mortgagee — Tender.**

2. The holder of a mortgage superior to the one foreclosed, assuming to be a redemptioner when not made so by statute, who tenders the amount necessary to redeem, becomes by the issuance to him of a certificate of redemption and the acceptance and retention by the holder of the certificate of sale of the money tendered, as between himself and the party who parts with such certificate, a "redemptioner."

**Same — Redemption from Superior Redemptioner.**

3. One who is not made by statute a redemptioner, but thus acquires the rights of a redemptioner, also assumes the obligations and liabilities of a redemptioner, and it follows that he must permit the lawful redemptioner to redeem from him within the period given by statute to a subsequent lienholder by judgment or mortgage for such purpose.

**Same — Payment by Check — Failure to Object — Legal Tender.**

4. The tender, by a lawful redemptioner, of a bank check issued by a solvent and reputable bank for the sum necessary to be paid to effect a redemption, to a prior redemptioner or his agent, for the purpose of receiving redemption money, effects a redemption, unless refused because it is a check, instead of legal tender, and the subsequent lienholder given an opportunity to procure and tender the necessary currency to comply with the legal requirements of the holder of the certificate.

**Same — Sheriff Agent of Purchaser in Proceedings to Redeem — His Authority.**

5. The sheriff or other person who conducts the sale on foreclosure by advertisement is the agent of the purchaser or holder of the certificate to receive redemption money, but is not such an agent as can bind his principal to accept a check, instead of money, from one qualified to redeem, or to retain the money received by such agent from one not a lawful redemptioner, if the principal makes seasonable objection to the form of payment, or refuses forthwith

to recognize the party making the tender as entitled to redeem as a redemptioner, when he is not made so by statute.

### Same — Redemption from Previous Redemptioner.

6. Under ·section 7465, Rev. Codes 1905, the property sold may be redeemed within one year from the day of sale in like manner and to the same effect as provided in chapter 12 for redemption of real property sold upon execution, so far as the same may be applicable, by—

(1) The mortgagor or his successor in interest in the whole or any part of the property.

(2) By a creditor having a lien by judgment · or mortgage upon the property sold, or on some share or part thereof, subsequent to that on which the property was sold.

Only those mentioned in subdivison 2 of the above section are redemptioners, and as such entitled to sixty days in which to redeem from a previous redemptioner.

### Same — Mortgage by Owner After Foreclosure.

7. Real estate is subject to mortgage by the holder of the legal title between the act of sale on foreclosure under a power contained in a prior mortgage and the expiration of the period allowed by statute for redemption.

### Same — Redemption — Remedial Statute — Construction.

8. The redemption statute is remedial in its nature, and is intended, not only for the benefit of creditors holding liens subsequent to a lien in process of foreclosure, but more particularly for the purpose of making the property of the debtor pay as many of his debts as it can be made to pay, and to prevent its sacrifice, and should be liberally construed.

### Same — Who May Redeem.

9. Every person having an interest in property subject to a lien has a right to redeem it from the lien at any time after the claim is due, and before his right of redemption is foreclosed. Rev Codes 1905, section 6141.

### Same — Certificate of Sale — Effect of.

10. The provision of section 7464, Rev. Codes 1905, that the certificate given on the execution of a power of sale contained in a mortgage shall have the same validity and effect as the certificate of sale in like manner furnished upon the sale of real property upon execution, provided for by section 7137, Rev. Codes 1905, does not relate to the effect of the act of sale, but to the validity and effect of the certificate.

### Same.

11. The certificate of sale in such case is only evidence of what transpired for the purpose of record, notice to protect purchasers

against intervening claims, and to show who may become entitled to a deed, and it conveys no title.

### Same — "Foreclosure Sale" — Effect — Embraces What.

12. A "foreclosure sale" under a power contained in the mortgage, which conveys the title of the mortgagor, is in a legal sense the complete foreclosure proceedings, beginning with the act of sale and terminating with the execution of the deed after the expiration of the period allowed for redemption. It includes all the proceedings for the foreclosure of the right of redemption by sale and deed.

### Same — Title Conveyed.

13. The title conveyed by such completed foreclosure sale is all the right, title and interest in and to the mortgaged premises which the mortgagor possessed at the time the mortgage was executed or which was subsequently acquired by him.

### Same — Who is Redemptioner — "On the Property Sold."

14. The phrase "on the property sold," in the statutory definition of a redemptioner as being one holding "a lien by judgment or mortgage on the property sold," applies to the land or premises, as those words are commonly used.

### Same.

15. The holder of a mortgage given after the act of sale under a prior mortgage, and before the expiration of the period allowed for redemption from such sale, is a redemptioner.

### Same — Sale Under Power.

16. The sale in the exercise of a power contained in a mortgage which conveys the title of the mortgagor is the sale as completed by the execution of a deed at the expiration of the period allowed for redemption.

### Same — Mortgage During Period of Redemption — Record of Mortgage.

17. The fact that a mortgage given after the act of sale occurred on a prior mortgage, and before the expiration of the period allowed for redmption, is not recorded until after the expiration of one year from the sale, but is recorded within the sixty days additional allowed where there has been a redemption, does not deprive the holder of the last mortgage given of the right to redeem on complying with the other statutory requirements.

Appeal from District Court, Pierce County; *Fisk*, J.

Action by the North Dakota Horse & Cattle Company against Siver Serumgard. Judgment for plaintiff, and defendant appeals.

Reversed and remanded.

*Guy L. Whittemore (Scott Rex* and *Engerud, Holt & Frame,* of counsel), for appellant.

Right to redeem depends upon an actual, not apparent lien. Section 7139, Revised Codes 1905; Scheibel v. Anderson, 79 N. W. 594; Scobey v. Kinningham, 31 N. E. 355; Todd v. Johnson, 57 N. W. 320.

Receipt and retention of money by certificate holder from one not entitled to redeem, works a redemption. McDonald v. Beatty, 10 N. D. 511, 88 N. W. 281; Roose v. Gove, 77 Pac. 246; Hare v. Hall, 41 Ark. 372.

Sannan is estopped to deny his character as redemptioner. Horn v. Cole, 12 Am. St. Rep. 111; Pom. Eq. Jur. sections 803, 809, 811, 895, 810; Fargo Gas. Co. v. Fargo Electric Co., 4 N. D. 219, 59 N. W. 1066; Olson v. Orton, 28 Minn. 36; Porter v. Fletcher, 25 Minn. 493; Summer v. Seaton, 47 N. J. Eq. 103, 19 Atl. 884; Hill v. Blackwelder, 113 Ill. 283; Power v. Larrabee, 3 N. D. 502, 57 N. W. 789.

Sannan is bound by the recitals in his redemption papers. 16 Cyc. 699; Blood v. Light, 38 Cal. 649; Daniels v. Tierney, 102 U. S. 421, 26 L. Ed. 187; Taylor v. Riggs, 57 Pac. 44; Libby v. Ralston, 43 Pac. 294.

Unauthorized payment to sheriff extinguishes the mortgage foreclosure. Meyer v. Mintoyne, 106 Ill. 414; McMillan v. Bagley, 83 S. W. 610; San Jose Bank v. Bank, 54 Pac. 83; Phyfe v. Riley, 15 Wend. 248.

Tender of check on redemption is good. Section 5260, Revised Codes 1905; 28 Am. & Eng. Enc. Law, 26. So of bank notes and silver certificates. Lathrop v. O'Brien, 58 N. W. 987; Koehler v. Buhl, 54 N. W. 157; Mitchell v. Copper Co., 67 N. Y. 280; Duffy v. O'Donovan, 46 N. Y. 223.

Redemption laws are liberally construed, to make property pay as far as possible. Lysinger v. Hayer, 54 N. W. 145; Hervey v. Krost, 19 N. E. 125; Todd v. Johnson, supra; Sprague v. Martin, 13 N. W. 34; Schenck v. Gerlach, 101 Ill. 388; Oldfield v. Eulert, 36 N. E. 615.

*A. E. Coger* and *Guy C. H. Corliss,* for respondent.

Sannan was not a lawful redemptioner. Lysinger v. Hayer, 54 N. W. 145; Todd v. Johnson, 52 N. W. 864.

Statutory right of redemption must be strictly construed. Frem. Ex. (3rd. Ed.) Sec. 314; Wooters v. Pinkell, 25 N. E. 791; Boyle v. Dalton, 44 Cal. 332; Gilfillan v. Ryder, 22 Minn. 87; Morss v. Purvis, 68 N. Y. 225; Gilchrist v. Comfort, 34 N. Y. 235; 17 Am. & Eng. Enc. 1035; Tharp v. Forrest, 40 N. W. 718; Waller v. Harris, 20 Wend. 555; Lynch v. Burt, 132 Fed. 417; Robertson v. Van Cleave, 26 N. E. 899.

After the purchaser has accepted a pretended redemptioner's money, he cannot question the latter's rights. Freeman on Executions, Sec. 317; Carver v. Howard, 92 Ind. 173; In re Eleventh St. 81 N. Y. 436; McDonald v. Beatty, 10 N. D. 511, 88 N. W. 281; Bagley v. Ward, 37 Cal. 121; Sexton v. Rhames, 13 Wis. 99; Hervey v. Krosh, 19 N. E. 125; Todd v. Johnson, supra; Roose v. Gove, 77 Pac. 246; Bozarth v. Largent, 21 N. E. 218; Rush v. Mitchell, 32 N. W. 367 Clark v. Butts, 76 N. W. 199; San Jose Bank v. Bank of Medera, 54 Pac. 83; White v. Costigan, 63 Pac. 1075; 66 Pac. 78; Byer v. Healy, 50 N. W. 70; Gilbert v. Husman, 41 N. W. 3; Abadie v. Lobero, 36 Cal. 390; Eldridge v. Wright, 55 Cal. 531.

Such receipt of money does not make the payer a lawful redemptioner. Bank v. Bank, supra; Hughes v. Helms, 52 S. W. 460; Jarrell v. Brubaker, 49 N. E. 1050; Scobey v. Kinningham, 31 N. E. 355; People v. Rathbun, 15 N. Y. 528; Thomas v. Bowman, 29 Ill. 426; Byer v. Healy, 50 N. W. 70.

After foreclosure sale, mortgagor or judgment debtor has no interest mortgagable or subject to lien. Dickinson v. Kinney, 5 Minn. 409; Curriden v. Railway Co., 52 N. W. 966; Pollard v. Harlow, 71 Pac. 454; Robinson v. Thornton, 34 Pac. 120; Boynton v. Pierce, 37 N. E. 1024; Duff v. Randall, 48 Pac. 66; Wood v. Conrad, 50 N. W. 903.

An unlawful redemptioner's redemption need not be heeded. Hare v. Hall, 41 Ark. 381; People v. Ransom, 4 Denio. 145; Pamperin v. Scanlon, 28 Minn. 345; Parke v. Hush, 13 N. W. 668; Buchanan v. Reid, 45 N. W. 11; Hardin v. Kelly, 144 Fed. 353; Keller v. Coman, 44 N. E. 434; Jack v. Cold, 86 N. W. 374.

Payment to effect redemption, must be in money. Sec. 5546, Rev. Codes, 1905; Thorn v. City of San Francisco, 4 Cal. 127; Lytle v. Etherly, 18 Tenn. 389; People v. Baker, 20 Wend. 602; Bank v. Warren, 7 Hill. 91.

Sheriff is not the agent of a foreclosure purchaser, so as to bind the latter in an unlawful redemption. Bennett v. Wilson 55 Pac. 390; Waller v. Harris, 7 Paige, 167; Waller v. Harris, 20 Wend. 555; Byer v. Healy, 50 N. W. 70.

He is bound only by a legal redemption. Hardin v. Kelly, 144 Fed. 353; Waller v. Harris, supra; Hare v. Wall, 41 Ark. 380; Hughes v. Olson, 77 N. W. 42; Bovey DeLaittre Lbr. Co. v. Tucker, 50 N. W. 1038; Bennett v. Wilson, 55 Pac. 390; Byers v. McEniry, 91 N. W. 797; Nichols v. Tingstad, 10 N. D. 172, 86 N. W. 694; McDonald v. Beatty, 10 N. D. 511, 88 N. W. 281.

SPALDING, J.   This is an action brought by the respondent for the determination of adverse claims to certain real property situated in Pierce county, N. D.   The complaint is in the statutory form.   The defendant answers, setting forth a series of transactions, involving mortgages, redemptions, and an attempted redemption, and prays for judgment that the plaintiff has no right, title, interest, or estate in the premises described, or any part thereof, but holds the pretended title thereto in trust for the defendant, and demands judgment that the plaintiff be denied the relief asked in its complaint and that the defendant be awarded affirmative relief:   First, that the defendant is the sole owner in fee of said premises, and of the whole thereof; second, that the plaintiff holds said premises in trust for the defendant herein; third, that the plaintiff be required to reconvey said premises to the defendant herein; fourth, that the plaintiff be forever enjoined from asserting any claim, right, title, interest, or estate in or to said premises, or any part thereof, adverse to the defendant herein; fifth, for such other and further relief as to the court may seem just in the premises; sixth, for his costs and disbursements.   The court made its findings, and judgment was entered for the plaintiff, adjudging and decreeing that the plaintiff is the owner in fee of the real estate involved, and that defendant has no title, legal or equitable, in any part thereof, and has no interest or lien thereon, and quieting the title of the plaintiff in and to the property described, as against the defendant, Siver Serumgard, and for its costs and disbursements.   The defendant appeals from the judgment, contending that on the facts found judgment should be entered in his favor.

As found by the court, one Russell was the owner of the premises involved and gave five mortgages thereon for various sums and on

different dates between the 8th day of October, 1898, and the 21st day of March, 1902. All such mortgages became the property, by assignment or otherwise, prior to the 28th day of June, 1904, of one Lillian M. Plummer. All these mortgages, and the assignments of those assigned, were duly recorded at about the date of their execution or assignment. On the 2d day of June, 1904, Russell gave a sixth mortgage on the same premises to one Coger to secure the sum of $600, and this mortgage was assigned to one Williams on the 25th day of March, 1905, and the assignment thereof duly recorded on the same day. This mortgage was recorded on the 2d day of June, 1904. Mrs. Plummer foreclosed her fifth mortgage by advertisement, and the sale occurred March 26, 1904. She became the purchaser and received the certificate, bearing date March 26, 1904, and it was duly recorded on that day. No question is made as to the regularity and validity of this foreclosure, or of the assignments. March 25, 1905, Williams, holding the sixth or Coger mortgage by assignment, redeemed from the foreclosure sale of the fifth mortgage as a redemptioner and received a certificate of redemption, which was recorded on the 25th of March, 1905. The validity of this redemption is not questioned. April 12, 1905, one Sannan acquired by purchase and assignment the first four mortgages on said premises held by Mrs. Plummer, and his assignments were duly recorded on the 14th day of April, 1905. On the 25th day of April, 1905, Sannan filed his affidavit and notice of redemption as required by law for a redemptioner, which were recorded on the same day, and the sheriff executed and deliverd to said Sannan his crtificate of redemption, dated that day, and recorded April 26, 1905. On the 3d day of March, 1905, Russell executed and delivered to Theo. P. Scotland & Co., incorporated, a seventh mortgage on said premises, which was not recorded till the 22d day of June, 1905. On the 17th day of June, 1905, Scotland & Co. assigned this mortgage to the defendant, Serumgard, and this assignment was recorded on the 22d day of June, 1905. On the 22d day of June, 1905, the defendant, Serumgard, as assignee of the Scotland mortgage, attempted to redeem the land in controversy from the foreclosure sale made on the fifth mortgage by serving and filing his affidavit and notice of redemption, which were recorded on that date, and tendering to the sheriff of Pierce county a banker's check for $3,187.50 as and for the total amount due on account of said foreclosure, together with interest and costs, and thereupon

such sheriff, without the knowledge or consent of Sannan, the holder of the certificate of sale, issued to Serumgard his certificate of redemption, bearing date and recorded on that day. After Sannan was informed of the delivery of such check by Serumgard to the sheriff for the purpose stated, and of the issuance of a certificate of redemption by the sheriff to Serumgard, he refused to acknowledge the right of Serumgard to redeem the property, and repudiated the act of the sheriff, and refused to acknowledge his right to issue said certificate of redemption, and when the sheriff delivered the banker's check, hereinbefore referred to, to Sannan, Sannan forthwith returned it to the sheriff, with instructions to return the same to Serumgard. In returning said check to the sheriff, Sannan did not object to the manner in which Serumgard had attempted to make redemption; that is, he did not object to it by reason of its having been tendered in form of a check, instead of legal tender money. After the check was returned to the sheriff, he on the same day, by mail returned it to Serumgard, who subsequently returned it to the sheriff, and some time after the 24th of June, 1905, the check was paid by the bank which issued it, it being a reputable and solvent bank, and the sheriff deposited the proceeds of the check to his own credit in the First National Bank of Rugby, N. D., and since such deposit the money derived from such check has been held by the sheriff for and subject to the control of Serumgard on deposit in that bank. The court found that Sannan had at no time in any manner recognized the right of Serumgard, as assignee of the mortgage given to Scotland & Co., to redeem said land from foreclosure sale, and that on the 26th day of June, 1905, the sheriff of Pierce county, refusing to recognize the validity of the redemption of Serumgard, or of the certificate of redemption issued to said Serumgard, executed to said Sannan, under the certificate of redemption theretofore issued to him, and on the theory that there had been no lawful redemption of the property since his redemption, a sheriff's deed in due form, in and by which he conveyed, as such sheriff, title to said premises in fee simple to Sannan. After the execution of said sheriff's deed, Sannan, on the 26th day of June, 1905, executed and delivered to the plaintiff a deed of conveyance of said premises. The seven mortgages referred to constituted and were the only liens affecting the premises, or any part thereof, at any time during the period covered by the events described.

The court found, as conclusions of law, that the mortgage executed and delivered by Russell to Scotland & Co., under which Serumgard attempted to redeem, was not a mortgage of the property sold under the foreclosure, but only of such interest as Russell retained after the foreclosure sale to Plummer, and that at the time of the attempted redemption by Serumgard, as assignee of the Scotland mortgage, Serumgard was not a redemptioner, and was not entitled to redeem the land from such foreclosure sale, and that the certificate of redemption issued to him by the sheriff was void and should be canceled of record. It also found that the sheriff's deed executed by the sheriff to Sannan, as well as the certificate of redemption issued to him, were lawful instruments, and conveyed title to the land involved in this action in fee simple, and that the plaintiff, as the assignee of Sannan, is the owner in fee of said real estate, and that defendant had no title, either legal or equitable, and no interest therein or lien thereon, and that the plaintiff is entitled to the possession of said real estate. Judgment was entered on these findings as hereinbefore recited. The appellant raises many points in his brief, and we shall consider them nearly in the order in which they are submitted.

1. He contends that Sannan, as assignee of the four mortgages, which were all prior liens to the mortgage foreclosed, was not a redemptioner, strictly and technically, within the statute, but maintains that nevertheless in fact he was a redemptioner, and cites section 7465 of the Revised Codes of 1905, which provides that property sold may be redeemed within one year from the day of sale in like manner and to the same effect as provided in chapter 12 of this code for redemption of real property sold upon execution, so far as the same may be applicable, by (1) the mortgagor or his successor in interest in the whole or any part of the property, or (2) a creditor having a lien by judgment or mortgage on the property sold, or some share or part thereof, subsequent to that on which the property was sold, and such creditor is termed a "redemptioner," and has all the rights of a redemptioner under that chapter, and the mortgagor and his successor in interest has all the rights of a judgment debtor and his successor in interest, as provided therein, and that in law he is a redemptioner by reason of having asserted himself as such, and having exercised the right of redemption, and because the money paid by him for redemption on the issuance of the sheriff's certificate of redemption was ac-

cepted and retained. If Sannan is not to be considered and treated as a redemptioner, Serumgard was not entitled to 60 days after Sannan's attempt to redeem in which to redeem from him, and therefore his attempt at redemption came too late. Respondent contends that Sannan is not a redemptioner, because he does not come within the definition of a redemptioner under the section of the statute quoted. Redemption from the purchaser at a foreclosure sale by the holder of a subsequent lien by judgment or mortgage is a compulsory sale of the interest acquired by the purchaser on foreclosure, and such redemption can only be enforced by one given this right by statute and then only by pursuing the method prescribed by the statute conferring the right. The title acquired by redemption on the part of a redemptioner is the same which he would acquire by a voluntary sale and purchase of the sheriff's certificate of sale, except that the statutes recognize the equity of requiring one given this right by law to permit those similarly situated to purchase from him within a specified time; in other words, it gives the subsequent lienholder the same right given him. A redemptioner is a statutory purchaser, and his right under the statute to redeem is the right to buy the purchaser's interest at the price paid by him, with interest. Tinkcom v. Lewis et al., 21 Minn. 132.

Sannan, not being a subsequent lienholder, could not compel Williams to accept his money and issue to him a certificate of redemption; but having asserted himself as a redemptioner, and having paid to Williams the money which would have entitled him to his certificate of redemption, had he been a statutory redemptioner, and Williams having accepted and retained the money, and issued a certificate of redemption to Sannan, Sannan at least became, as between himself and Williams, a redemptioner, and entitled to all the rights of a redemptioner. It has been so held by several courts. See Hare v. Hall, 41 Ark. 372; Roose v. Gove, 32 Col. 522, 77 Pac. 246; Smith v. Jackson, 153 Ill. 399, 39 N. E. 130; MacGregor v. Pierce et al., 17 S. Dak. 51, 95 N. W. 281; McDonald v. Beatty et al., 10 N. D. 511, 88 N. W. 281; Hervey v. Krost et al. 116 Ind. 268, 19 N. E. 125; Carver et al. v. Howard, 92 Ind. 173. In McDonald v. Beatty this court said: "Concededly that plaintiff paid to the holder and owner of the sheriff's certificate the amount required to make redemption and such payments were made for such purposes, it might be conceded that

the owners of the sheriff's certificate could have successfully challenged plaintiff's right to redeem on the ground now urged; but they did not see fit to do so. On the contrary, they accepted and retained the redemption money, and by doing so they waived any question as to the right to redeem which may have existed, and thereby validated the redemption, and clothed plaintiff with their statutory right under plaintiff's certificate. That such effect follows the retention of redemption money is well settled, and in cases where the persons redeeming did not possess the strict statutory right of redemption. * * * It is also well settled that the holder of the sheriff's certificate and the person redeeming it are the only persons concerned in the regularity of the redemption. The owner of the certificate may deal with it as he sees fit. He may sell and assign it; or he may retain it, and insist that any one who wishes to secure his right thereunder by redemption shall do so only by strictly complying with the statute, or he may waive his right to require exact and formal observance of the statutory mode, and his acceptance of the redemption money will be such a waiver. Carver v. Howard, supra. In this case it makes no difference to the defendant whether the rights evidenced by the sheriff's certificates were owned by the original purchasers or the plaintiff, McDonald. He could redeem from the plaintiff, as well as from the original purchasers, and it did not add anything to the amount required to free his premises from the lien, and by failing to redeem, his rights in the real estate were lost." In 3 Freeman on Executions (3d Ed.) 317, Mr. Freeman says: "If a redemption made by a disqualified person is acquiesced in * * * by the purchaser or other person from whom redemption is made, it will estop such person, after he has received such redemption money, from denying the validity of the redemption." Numerous other authorities, which it is not necessary to cite, hold that the party who receives and retains the money from one not entitled to redeem is estopped from questioning the validity of the redemption.

These cases, it will be observed, take into consideration only the rights of the two parties dealing together; that is, the party who holds the certificate of sale and the unqualified redemptioner whose money is accepted. More than that question, however, is involved in this case, because it may be assumed that, whatever the relations of the two parties themselves or their status as to each other may

be, the unqualified redemptioner is not a redemptioner, and not to be treated as one by, and does not assume any of the obligations of a redemptioner to, subsequent lienholders who might otherwise be entitled to redeem. The respondent contends that this redemption by Sannan gave him and his assigns the rights of a successor in interest to the mortgagor, freed from the obligations of a redemptioner, and that the statute allowing 60 days in which a redemptioner may redeem from a prior redemptioner does not apply; but we are of the opinion that it does apply, and that as Sannan voluntarily placed himself in a position where he became a redemptioner, as between himself and Williams, as is held in McDonald v. Beatty et al., supra, then he must be considered a redemptioner for all purposes. This is implied in the decision above quoted, and we hold that a holder of a mortgage superior to the one foreclosed, assuming to be a redemptioner, and who, in the method prescribed by statute, tenders the amount necessary to redeem, becomes by the issuance to him of a certificate of redemption, and the acceptance and retention by the holder of the certificate of sale of the money tendered, as between himself and the party who parts with such certificate, a redemptioner, and that, thus acquiring the rights of a redemptioner, he in equity assumes the obligations and liabilities of a redemptioner. Hence he must permit a lawful redemptioner to redeem from him within the 60 days which the statute gives a subsequent lienholder by judgment or mortgage for such purpose. It necessarily follows that Sannan became a redemptioner under the circumstances and facts of this case, and that a qualified redemptioner holding a lien subsequent to his could redeem from him within 60 days after his redemption. We are satisfied that this is in accordance with sound principles of equity.

Respondent's counsel quotes at some length from White v. Costigan, 134 Cal. 33, 66 Pac. 78, where it was held that one unqualified to redeem, but whose money was accepted and retained, became an equitable assignee of the interest of the party from whom he redeemed and entitled to have his equitable right perfected. We see nothing in that case in conflict with our theory on this point. A certificate of redemption is only an assignment of the rights of a prior holder under the sale. It is a statutory assignment, and we simply go a step further than it was necessary for the court to go in the California case, by holding that, having assumed the attitude of and obtained the benefits accruing to a redemptioner,

which he was not entitled to, Sannan must also assume the obligations of a redemptioner, precisely the same as though he had been entitled to enforce a redemption, and that he cannot now change his attitude to the prejudice of other redemptioners. Railway Co. v. McCarthy, 96 U. S. 258, 24 L. Ed. 693; Daniels et al. v. Tearney et al., 102 U. S. 415, 26 L. Ed. 187; Power v. Larabee, 3 N. D. 510, 57 N. W. 789, 44 Am. St. Rep. 577; Davis v. Wakelee, 156 U. S. 680, 15 Sup. Ct. 555, 39 L. Ed. 578.

2. The next point in logical order is made by the respondent. It is to the effect that Serumgard has no rights in the premises, because the payment made to the sheriff in his effort to redeem from Sannan was not in money, but in the form of a bank check issued by a solvent and reputable bank. Objection was made on other grounds, but no objection was made as to the form of payment    We find some very early cases to support this doctrine, but the decisions in such cases were made when a very small part of the business of the country was conducted by means of checks and drafts. In these days, when the commercial transactions of the country are almost universally carried on by means of bank checks and drafts, we feel that a business custom so universal should be recognized, and that payment by check issued by a reputable and solvent bank should constitute payment, unless seasonable objection is made to its receipt, and the reason specifically given, so as to give the person tendering the check an opportunity to procure and tender legal tender currency if available. This is in accordance with the weight of modern authority. Jessup et al v. Carey, 61 Ind. 584; Boyd v. Olvey, 82 Ind. 294; Koehler v. Buhl, 94 Mich. 496, 54 N. W. 157; Lathrop v. O'Brien, 57 Minn. 175, 58 N. W. 987; McGrath v. Gegner, 77 Md. 331, 26 Atl. 502, 39 Am. St. Rep. 415; Moynahan v. Moore, 9 Mich. 9, 77 Am. Dec. 468; Ball v. Stanley, 13 Tenn. 199, 26 Am. Dec. 263, 28 Am. & Eng. Enc. Law, 26.

3. The sheriff having at first accepted the check and issued his certificate of redemption to Serumgard, the question arises whether he could, by so doing, bind Sannan, and make the certificate of redemption valid as against the protest and objection of the person entitled to receive the money. In this class of proceedings the person making the sale may be the sheriff or any other person properly designated for that purpose, and under our statute the person making the sale may issue the certificate of sale, as well as

the certificate of redemption, and such sheriff or other person who conducts the sale on foreclosure by advertisement is the agent of the purchaser or holder of the certificate to receive the redemption money; but this does not make him an agent for all purposes, or for the purpose of binding the principal on an illegal redemption, if his principal promptly repudiates the action of the sheriff or other person. In the very nature of things it should not make him an agent for such purpose. He is a statutory agent, and possesses only a limited authority on behalf of his principal. The distance between them may be so great as to preclude speedy communication, and necessitate delay between the time of the attempted redemption and the receipt of information concerning the same by the holder of the certificate. For this and many other reasons, to hold the sheriff's acts binding on his principal in this respect might often work great injustice. We are of the opinion that he is not such an agent as to bind his principal to accept a check, instead of money, from one qualified to redeem, or to retain the money received by such agent from one not a lawful redemptioner, if the principal makes a seasonable objection to the form of payment or refuses forthwith to recognize the party making the tender as entitled to redeem, when he is not made a redemptioner by statute. Bennett v. Wilson, 122 Cal. 509, 55 Pac. 390, 68 Am. St. Rep. 61.

4. Having concluded that a qualified redemptioner, whose lien was subsequent to that of Sannan, had 60 days after his redemption in which to redeem from him, and that the payment by bank check was good, because not objected to for the reason that it was a check, instead of legal tender currency, it becomes necessary to consider whether, under the statute, the defendant, Serumgard, himself was entitled to redeem. He had become the owner and holder of the seventh mortgage. The foreclosure sale which we are considering occurred on the 26th day of March, 1904. The owner, or his successor in interest, had until the 26th day of March, 1905, to redeem. Sannan redeemed from this sale as a redemptioner on the 25th day of April, 1905, and the holder of any lien by judgment or mortgage on the property sold, subsequent to the mortgage on which the sale occurred, therefore, had until June 24, 1905, in which to redeem. Serumgard contends that he is a redemptioner, because he says he holds a lien by mortgage upon the property sold subsequent to the one foreclosed. In considering

this question, it is necessary to determine what right or property in real estate may be the subject of mortgage, whether appellant's. mortgage is upon property which may be mortgaged, and, if so, whether he is given by the statute the right of a redemptioner. In this state a mortgage is not a conveyance of title, but is simply evidence of a lien.     It is defined by section 6149, Revised Codes. 1905, as a contract by which specified property is hypothecated for the performance of an act, without the necessity of a change of possession.   Section 6154 provides that any interest in property which is capable of being transferred may be mortgaged, and sec-- tion 6162 that a mortgage is a lien upon everything that would pass by a grant of the property, and upon nothing more.   Section 4945, Revised Codes 1905, defines a transfer as an act of the par-- ties, or of the law, by which the title to property is conveyed from one living person to another, and section 4947 permits property of any kind to be transferred, except as otherwise provided by the two following sections, which sections are in no way material to this case.   Section 4965 provides that a transfer vests in the trans- feree all the actual title to the things transferred which the trans- ferror then has, unless a different intention is expressed or is nec- essarily implied.   A transfer, as applied to real estate, is termed a "grant."

According to the authorities, the power to mortgage and the right to sell are governed by the same principles, as likewise are the rights to redeem from execution sale and from the foreclosure of a mortgage.   While there are few statutes on these subjects: identical with ours, yet these questions are largely governed by certain general principles of substantially uniform application in those states where a mortgage is held only to be a lien; and author-- ities supporting this construction of the provisions of the statutes: cited above are not lacking.   In Fish v. Fowlie, 58 Cal. 373, it is: held that the holder of the legal title to real estate can mortgage it. Such is the express provision of our code.   Revised Codes 1905, section 6154.     In Curtis v. Millard, 14 Iowa, 128, 81 Am. Dec.. 460, it is held that, prior to the sheriff's deed, land is subject to· sale under execution or to conveyance by deed, and that a judgment rendered after execution sale, and before the expiration of the· time for redemption, attaches as a lien on the debtor's interest.   In Bridgeport v. Blinn, 43 Conn. 274, the supreme court of that state· held that the mortgagor during the period allowed for redemption

had a right which he could alienate, and one which his creditor could attach. In Atwater v. Manchester Savings Bank, 45 Minn. 345, 48 N. W. 187, 12 L. R. A. 741, it is held that an attachment levied on the last day for redemption constitutes a lien, and the attaching creditor a redemptioner. Freeman, in his work on Executions, at section 182, states the rule to be that pending the expiration of the time for redemption, while the debtor has possession of the property, he has a beneficial as well as a legal estate therein, which is subject to his voluntary disposition, and that a preponderance of authorities now affirm that such an estate is susceptible of levy and sale under execution against him, and at section 173 says the legal title may always be bound to the extent of the beneficial interest covered by it. In Kaston v. Story, 46 Or. 308, 80 Pac. 209, 114 Am. St. Rep. 871, the question was whether a judgment obtained during the period of redemption could form a basis for a sale as against the successor in interest of the mortgagee under a prior sale, and the court says: "The legal title remains in the mortgagor or his successor in interest until a sale under a foreclosure decree has ripened into a title by the execution and delivery of a sheriff's deed. * * *Therefore, at the time of the second judgment, * * * the legal title to the property was in Lundin, subject to the inchoate right of the purchaser at the foreclosure sale, and the judgment became a lien on such property, subject to be defeated only by the consummation of such sale by the execution and delivery of a sheriff's deed." Robinson v. Thornton et al., 102 Cal. 675, 34 Pac. 120, relied upon as an authority in favor of the respondent in this case, recognizes throughout that a creditor attaching land during the period of redemption obtains a valid lien upon it. It is plain that during the time allowed by law for redemption the debtor possesses such an interest in the real property sold as will support a mortgage thereon.

We feel that we might rest the right to redeem on the right to mortgage, as after a very careful consideration of all the authorities to which our attention has been called, and many others, we are satisfied that the right to redeem is coincident with the right or power to mortgage, when by the terms of the statute subsequent mortgagees are included among redemptioners, and that no technical or strained construction should be given the terms of the statute which may prevent the exercise of the right. This is evidenced by the object and policy of the law in providing for re-

—31—

demption by holders of liens by mortgage or judgment. The redemption statute is remedial in its nature and purpose, and is intended not only for the benefit of creditors holding liens, but more particularly for the purpose of making the property of the debtor pay as many of his debts as it can be made to pay, and to prevent its sacrifice, and it should be liberally construed. In the case at bar the mortgage of the appellant is $1,500, the amount necessary to redeem when he attempted to make redemption was $3,187.50, and the property is alleged to be worth $10,000. Concerning facts similar to these, and the policy of the law in such cases, the remarks of Judge Pardee in Bridgeport v. Blinn, supra, are quite appropriate. He says: "The law intends to apply the property of debtors to the payment of their debts. Burns owes Blinn about $400, and has secured payment of the debt by the mortgage of land worth $1,500. He owes the petitioner about $250. This land, upon every equitable principle, should be disposed of so as to pay both debts; and this can be done without violence to Blinn's right. He allowed Burns to become his debtor. He took a mortgage by way of security for his claim. All that he is entitled to is payment. The decree passed in his favor reserved to Burns the right ot pay and redeem. If the mortgage performs its office, first in securing, and lastly in paying, the debt, Blinn can ask for no more. After payment the land should go back to the mortgagor, or his representative, or to his creditors. The tender by the petitioner prevented the title from becoming absolute in Blinn, preventing him from obtaining the inequitable right to retain as against other creditors of Burns' land worth $1,500 for a debt amounting to less than $250." See, also, Williams v. Lash, 8 Minn. 496 (Gil. 441), Van Rensselaer v. Sheriff, 1 Cow. (N. Y.) 501, and Atwater v. Bank, supra.

But in view of the fact that this case has been twice exhaustively argued, and that on this feature we have arrived at a conclusion opposed to that entertained after the first argument, as well as the great importance of the rule to be established as effecting titles, we deem it advisable to give our reasons somewhat more at length. Every person having an interest in property subject to a lien has a right to redeem it from the lien at any time after the claim is due, and before his right of redemption is foreclosed. Revised Codes 1905, section 6141. Section 7464 provides that, upon a sale of real property by virtue of a power of sale contained in a

mortgage, the officer making it shall give the purchaser a certificate containing a description of the real property, the price bid, the price paid, the costs and fees, and that it shall have the same validity and effect as the certificate of sale in like manner furnished upon sale of real property upon execution. Section 7137, being the corresponding section under executions, provides that such certificates shall be taken and deemed evidence of the facts therein recited and contained, and also that upon a sale of real property the purchaser is substituted to and acquires all the right, title, and claim of the judgment debtor thereto, and that in cases like the one at bar the real property is subject to redemption. It is strenuously argued by the respondent that this last-mentioned provision applies in the case of foreclosure by advertisement. If this is correct, it can only be so by reason of the reference made in section 7464 to the validity and effect of the certificate; but we are of the opinion that that reference is limited to the validity and effect of the certificate only, and does not refer to the effect of the sale. The provision mentioned in section 7137 relates to the effect of the sale, and not to the effect of the certificate of sale. The certificate of sale is only evidence of what transpired for the purposes of record, notice, and to protect purchasers against intervening claims, and as showing who is entitled to a deed, and it, of itself, conveys no title. It is said in Smith v. Colvin, 17 Barb. (N. Y.) 157, "that it only operates by way of notice to protect the purchaser against intervening claims, except the right of redemption. * * * This mode of transferring title to real estate is in derogation of law, which requires the owner's consent, and the statute should, therefore, be construed strictly, or, in other words, title should not be regarded as devised or transferred by the sale alone, unless such is the plain import of the statute." See, also, Foorman v. Wallace, 75 Cal. 552, 17 Pac. 680; Lightcap v. Bradley, 186 Ill. 510, 58 N. E. 227.

First the question arises as to what is meant by the sale—whether the word "sale" is used in this connection to refer simply to the act of knocking down the property to the highest bidder at auction, or whether it means the proceeding which commences at that time and terminates on the execution of the deed at the expiration of the period allowed by law for redemption. Some provisions in the statute regarding executions and foreclosures unquestionably, in referring to the sale, mean simply the act of receiving and ac-

cepting a bid; but in the connection in which it is used in relation to the title conv₋yed by foreclosure by advertisement we have concluded that it m₋ist be taken in the broader sense, and as applying to the whole p oceeding from the auction to the deed—that the sale referred to means the foreclosure of the right of redemption by sale and deed. This is made clear by section 7467, wherein the officer, or other person making the sale, is required, if the premises are not redeemed, to complete such sale by executing a deed of the premises so sold, and it is provided that such deed shall have the same force and effect as if it had been executed pursuant to a sale under foreclosure of the mortgage by action. Section 7483 makes, the deed on foreclosure by action vest in the grantee all the right, title, and interest of the mortgagor in and to the property sold at the time the mortgage was executed, or which was subsequently acquired by him, etc. The provision that the deed shall vest all the right, title, and interest of the mortgagor in and to the property sold is an idle and meaningless provision, if, as contended by the respondent, all such title vested at the time the purchase occurred. In Daniels v. Smith, 4 Minn. 172 (Gil. 117), it is said: "It is perhaps not strictly correct to say that the purchaser takes the title, inasmuch as the sale is not complete until the expiration of the time allowed for redemption and a deed has been executed as provided by statute. * * * Strictly speaking, no title passes by the sale itself. The sale, payment of the amount bid, and giving of the certificate provided for by statute has about the same effect as an escrow, which is a deed executed and delivered to some third person to keep until some act is done or condition performed, and then it is to be delivered to the grantee and to become of full effect. * * * But until this second delivery the title to the premises remains in the grantor." And in Donnelly v. Simonton, 7 Minn. 167 (Gil. 110), the court of that state says further on this subject: "I think it is true, as claimed by respondent, that upon the sale of mortgaged premises by advertisement the legal title vests in the purchaser, and he becomes the owner of the land. The principal difficulty in the matter is to determine what constitutes a sale, or when the sale becomes an act fully completed. Is it when the sheriff or other proper person offers the premises at public auction and knocks them down to the highest bidder? Or not until the time for redemption expires and the purchaser obtains a deed in pursuance of the provisions of the statute? It

is somewhat difficult to determine from the language of the stat-
ute what the intention of the legislature was in this regard, since
sometimes the one and sometimes the other are. spoken of as the
sale. From a careful examination of the whole chapter, how-
ever, and subsequent enactments, it becomes, I think, apparent that
the intention was not to vest the title (certainly not the absolute
title) in the purchaser until the expiration of the time for redemp-
tion. Section 12, chapter 75, Comp. St., above cited, provides for
the completion of the sale by the execution of a deed after the ex-
piration of the time of redemption. * * * By our statute a
mortgage of real property is not to be deemed a conveyance, so
as to enable the owner of the mortgage to recover possession of
the real property without a foreclosure." And in Standish v.
Vosberg, 27 Minn. 175, 6 N. W. 489, it is held that a foreclosure
is not complete, so as to operate as a sale, until the time allowed
by statute for redemption has expired; that till then the title does
not pass. See, also, Horton v. Maffitt, 14 Minn. 289 (Gil. 216)
100 Am. Dec. 222. In Smith v. Colvin, supra, the New York court
says: "The sale is not consummated until conveyance by the
sheriff, and in Curtis v. Millard & Co., 14 Iowa, 128, 81 Am. Dec.
460, it is held that there is no sale in a legal sense under a judg-
ment or decree until the title passes, and till that time the purchaser
has a mere inchoate and indefeasible right to conveyance of the
legal title." And in Bank v. Union Insurance Co., 88 Cal. 497,
26 Pac. 509, 22 Am. St. Rep. 324, the supreme court of California
holds that the foreclosure of a mortgage embraces the sale of the
property and the execution of the sheriff's deed, as well as the
decree of the court ordering sale, and that a mortgage cannot be
said to be foreclosed, even in the sense of the California code, until
the mortgagor's right of redemption is cut off, and that where the
time for redemption had not elapsed, and no deed had been made
to the purchaser, there has been no foreclosure of the
mortgage, and that, unless the right of redemption has been
extinguished, there is no payment pro tanto by the mortgagor in
the sale; that, where no deed is passed, the foreclosure is incomplete,
and no payment has been made. To the same effect, by the same
court, see Goldtree v. McAlister, 86 Cal. 93, 23 Pac. 207, 24 Pac.
801. See, also, Puffer v. Clark, 7 Allen (Mass.) 80.

In this connection it is strenuously argued by the respondent
that all the title of the mortgagor passed at the time of the auction,

except the bare, naked, legal title, and it relies upon the case of Pollard v. Harlow, 138 Cal. 390, 71 Pac. 454, as an authority sustaining such position, and that therefore the mortgage held by appellant did not constitute a lien upon the property sold under the proceedings through which respondent claims. But the Pollard case cannot be construed as an authority on that point, when carefully analyzed. The facts are entirely different. Foreclosure proceedings had taken place on two mortgages by action, and the holder of the certificate under the second mortgage sought to redeem from the holder of the certificate under the prior mortgage. The code of California, like that of this state, provides that from such foreclosure redemption may be made by the mortgagor, or his successor in interest, or by a creditor having a lien by judgment or by mortgage on the property sold, etc. It was contended that the holder of the second certificate was not entitled to redeem, either as a redemptioner or as a successor in interest. The court held that she was not entitled to redeem as a redemptioner, because her judgment foreclosing the second mortgage was satisfied by the sale to her under that mortgage, and that the lien of the judgment had ceased to exist, and that this fact left her with neither a lien by judgment nor mortgage, and therefore placed her outside the statutory definition of a redemptioner. |The opinion was a commissioner's opinion, and discusses the subject of the interest sold at the sale under the judgment foreclosing the first mortgage. The argument of the commissioners at first appears to sustain the theory of the respondent in this case, yet they expressly disclaim passing definitely on the question as to what title passed by the act of sale—i. e., whether it was legal or equitable—and held that, whatever it might be, the holder of the second certificate was a successor in interest and entitled to redeem as such. The decision hinges upon the extinction of the judgment lien by the act of sale. No such principle is involved in the case at bar. The Serumgard mortgage had not been foreclosed. It was a mortgage by description on the same land on which foreclosure proceedings on the prior mortgage had been instituted, and, if that mortgage constituted a lien upon the premises, its lien had not been extinguished, as in the California case, by any act of sale. If Serumgard comes within the definition of a redemptioner by holding a lien by mortgage upon the property sold, then he is entitled to redeem. The supreme court of California considered the Pollard

case on petition for rehearing, reported in 138 Cal. 390, 71 Pac. 648, and repudiated the argument of the commissioners in the first opinion, but concurred in the conclusion by saying: "It is enough for the purposes of the decision of the case to say that such purchaser acquires a qualified title, which is sufficient to, and does, carry with it the right to redeem from another sale." Robinson v. Thornton, supra, is also cited; but, while there are sentences contained in the opinion which tend to support respondent's theory, when read in the light of the facts before the court and of the many other decisions of the supreme court of California, we think it cannot properly be given much weight as an authority in the case at bar. The most relevant authority cited by respondent is Dickinson v. Kinney, 5 Minn. 409 (Gil. 332), where the supreme court of that state held, through Judge Flandrau, that an execution sale carried all the estate that the debtor had in the land, subject only to the right of redemptioners to purchase it, and that, therefore, the purchaser could assign his interest by deed or quitclaim deed. The latter case, taken by itself, appears to sustain respondent's contentions; but unfortunately the supreme court of that state has in the decisions of other cases, from some of which we have quoted, at least modified the view it there expressed.

There are, however, other reasons for disaffirming the views of respondent. It relies upon some of the later California cases, as above noted, to support its theory. In those cases the reasoning of that court was based upon the provisions of section 700 of the Code of Civil Procedure of that state, which is identical with section 7137, supra. In that state foreclosures are made by action only, and the sales are made upon execution, and hence the provision that upon the sale of real property the purchaser is substituted to and acquires all the right, title, interest, and claim of the judgment debtor thereto is clearly as applicable on foreclosures as it is to sales under other judgments and executions; but, as we have seen, section 7464 of our code omits all reference to title conveyed. Without considering or determining what the effect of section 7137, supra, is on those sales to which it applies, or the distinction, if any, which it effects under our code between sales under execution, and those under a power of sale contained in a mortgage, it certainly has no controlling force in determining what title is conveyed by the bare act of sale under a power. Many of the California cases wherein that section has been in question may

readily be construed as extending its meaning to the sale when completed by the deed. Most of the cases from that state which we shall cite were decided on facts which arose before the enactment of that section into the law of that state, and when the statute, like ours on foreclosure by advertisement, was silent as to what title passed before the time for redemption expired. It is unnecessary to analyze all the California cases, or trace the reasons for the apparent changes of construction by the courts of that state relating to the title retained by the mortgagor, and that passing to the purchaser at the time the sale occurs, because, as we have shown, the paragraph relating to the purchaser acquiring all the right, title, and interest of the debtor does not apply to sales under a power contained in a mortgage. We, however, in view of the argument, call attention to the doctrine of the earlier California cases, which, as we have shown, are the only cases in point. Those decisions have often been misinterpreted, both by counsel and courts.

One early leading case on the subject is McMillan v. Richards, 9 Cal. 365, 70 Am. Dec. 655, wherein Judge Field, speaking on behalf of the court, and upon an exhaustive discussion of the subject of mortgages under the modern theory, and the rights of the different disinterested parties, says: "The settled doctrine of equity is that a mortgage is a mere security for a debt, and passes only a chattel interest; that the debt is the principal, and the land the incident; that the mortgage constitutes simply a lien or incumbrance; and that the equity of redemption is the real and beneficial estate in the land, which may be sold and conveyed by the mortgagor, in any of the ordinary modes of assurance, subject only to the lien of the mortgagee. * * * Proceedings for the foreclosure of mortgages in the sense in which the terms are used in England and in several of the states, by which the mortgagor, after default, is called upon to repay the loan by a specified day, or to be forever barred of his equity of redemption, are unknown to our law. The owner of the mortgage in this state can in no case become the owner of the mortgaged premises, except by purchase upon sale under judicial decree consummated by conveyance. A foreclosure suit by our law results only in the legal ascertainment of the amount due and a decree directing the sale of the premises in its satisfaction. * * * The estate of the mortgagor and of the judgment debtor after the sale stand upon the

same footing. * * * The decisions as to the estate of the judgment debtor after sale become, therefore, authorities for determining the estate of the mortgagor after sale under decree, and from them it will be found that the estate must remain in the mortgagor until a consummation of the sale by conveyance, as it does in the judgment debtor, and that the conveyance, when executed, will take effect in the one case from the date of the mortgage, as it does in the other from the time the lien of the judgment attached. * * * There is no difference, so far as the liens of judgments are concerned, between out statutes and that of New York. Here the statute requires the lien by judgment of the creditor to be subsequent to that on which the property is sold. There the statute requires the judgment which creates the lien to be recovered before the expiration of the time for redemption. The period within which the judgment creating the lien must be recovered is not limited in either case by the sale. In Kent v. Laffan, 2 Cal. 595, the judgment under which a redemption was claimed was recovered after the sale of the premises under the decree of foreclosure. * * * It follows, from the views above expressed, that the legal title of the premises remained in Randall after the sale under the decree of foreclosure, and that the plaintiff acquired a lien by his judgments. * * * The title remained in the debtor until conveyance executed. * * * Until then the purchaser had no legal estate in the premises, but only a right to an estate which might be perfected by conveyance." And this is followed by People v. Mayhew, 26 Cal. 656, in which the court says: "When a judgment debtor pays to the purchaser, at a sale under an execution or an order of sale, a sum of money for the purpose of affecting redemption of the land, what can that which he pays be properly denominated? Suppose, first, that the judgment creditor is the purchaser, that the sum bid equals the amount of his judgment, and that thereupon the execution is credited by the sheriff with the amount bid. The purchaser does not thereby acquire the defendant's title to the land, for that passes to him by the execution and delivery of the sheriff's deed. This is manifest by the provisions of section 232 of the practice act (St. 1851, page 88, chapter 5), which declares in effect, that upon a redemption being made by the debtor the sale becomes null and void, which could not be the case if the title had passed, and by the fact that the purchaser can neither take nor recover the posses-

sion of the land previous to the sheriff's deed. His judgment is not satisfied by the sale; for, if the sale should for any reason be set aside, the judgment remains in full force, and such could not be the case if it had been satisfied. The purchaser, prior to the execution of the sheriff's deed, holds merely a lien upon the land, differing from the lien of the judgment in this: that it is more specific and may continue after that of the judgment has expired, and that the lien is much nearer a complete enforcement than that of the judgment; the single act of the execution and delivery of the sheriff's deed being required."

This was likewise followed by Page v. Rogers, 31 Cal. 294, which has been cited many times by the California courts and the courts of both Dakotas. In some cases it has been cited to show that during the period allowed for redemption the debtor, or his successor in interest, retains only the mere dry, naked, legal title; but a careful perusal of the opinion discloses that this was not what that court held, and that the definition so used in the opinion in that case applies to the title of the debtor, or his successor in interest, between the date of the expiration of the time allowed for redemption and the execution and delivery of the sheriff's deed, and does not apply to the period between the sale and the expiration of the time for redemption. The court says: "To call the interest of the purchaser at a sale or execution before making of the sheriff's deed a lien merely is not very exact. In a general sense it may be a lien; but it is more. The purchaser obtains an inchoate right, which may be perfected into a perfect title without any further action than the subsequent execution of a deed in pursuance of a sale already made. * * * The sale is simply a conditional one, which may be defeated by the payment of a certain sum by certain designated parties within a certain limited time. If not paid within the time, the right to a conveyance becomes absolute, without any further sale or other act to be performed by anybody. The purchaser acquires an equitable estate in the lands, conditional, it is true, but which may become absolute by simply lapse of time without performance of the only condition which can defeat the purchase. The legal title remains in the judgment debtor, with a further right in him and his creditors having subsequent liens to defeat the operation of a sale already made during the period of six months, after which the equitable estate acquired by the purchaser becomes absolute and indefeasable, and the mere

dry, naked, legal title remains in the judgment debtor, with authority in the sheriff to divest it by excuting a deed to the purchaser." And this construction is followed in Bennett v. Wilson, 122 Cal. 509, 55 Pac. 390, 68 Am. St. Rep. 61, after the enactment of section 700 of the Code of Civil Procedure of that state. See, also, Freeman on Executions, sections 193, 323; Horton v. Maffitt, supra; Reynolds v. Harris, 14 Cal. 667, 76 Am. Dec. 459; Swain v. Stockton Savings & Loan Society, 78 Cal. 600, 21 Pac. 365, 12 Am. St. Rep. 118; Donnelly v. Simonton, supra; 8 Current Law, 576; Smith v. Colvin, supra; Foorman v. Wallace, supra.

The statute of Oregon is in effect like that of this state, and in the well-considered case of Flanders v. Aumach, 32 Or. 19, 51 Pac. 447, 67 Am. St. Rep. 504, the court of that state says: "During the interim between the sale and the deed the rights of the parties interested are measured by the statute. The sale is inchoate, and does not transfer title until consummated by the execution and the delivery of the deed in due course of law. If subsequent lienors redeem, the course of the sale is not thereby impeded or precluded, but finally culminates in a deed as if no redemption had been made by any one, and the deed puts an end to the lien of the judgment or decree under which the sale was made, and all other liens subsequently acquired; but a redemption by the judgment debtor terminates the sale and restores the estate. The effect is the same on a redemption by a successor in interest. The lien of the judgment is only partially satisfied by the sale, is not arrested or eradicated, but is simply suspended, as are the liens of all creditors having subsequent judgments, decrees, or mortgages pending the sale. If the sale is perfected, all these are swept away." See also, Kaston v. Story, supra; Baber v. McClellan et al., 30 Cal. 136; Curtis v. Millard & Co., supra; Phillips v. Hagart, 113 Cal. 552, 45 Pac. 843, 54 Am. St. Rep. 369.

In construing redemption statutes, to determine whether one is included in their terms, the principle is stated to be that if one is in privity in title with the mortgagor, and has such an interest that he would be a loser by the foreclosure, he may redeem, and that any person who may have acquired any interest in the premises, legal or equitable, by operation of law or otherwise, in privity with the mortgagor, may redeem and protect such interest in the land, provided it be an interest in the land derived in some way, mediate or immediate, from or through or in the right of the mort-

gagor, so as in effect to constitute a part of the mortgagor's original equity of redemption, and is a lien at the time when he comes to redeem, and that it need not be a lien at the time of the sale. See Mr. Freeman's note, 21 Am. St. Rep. 245, and cases cited; Story's Equity Jurisprudence, section 1023; Pomeroy's Equity Jurisprudence, section 1220; supplement to Wiltsie on Mortgage Foreclosures, sections 959, 960; Van Rensselaer v. Sheriff, supra; Perkins v. Center, 35 Cal. 713. To construe the phrase "upon the property sold" as applying only to the fraction of the title to the land, rather than to the land itself, would be extremely technical, and we are unable to find any authorities to bear out any such construction. On the contrary, the terms "property sold," "real estate," "premises," and "land" are applied in such cases indiscriminately and interchangeably by the authorities, and we are satisfied that the legislature, in enacting the law relating to redemptions, intended it to apply to the "land" or the "premises," as those words are used commonly, and not in any technical sense. In Phillips v. Hagart, supra, the California court expressly held that a deed executed by the mortgagor after foreclosure sale constituted the grantee in the deed a successor in interest and entitled him to redeem. If the grantor had a right to convey the land, and thereby constitute his grantee a successor in interest, the same grantor, under section 6154, supra, had a right to execute a mortgage upon the land and make the mortgagee a subsequent mortgagee, or a lienholder, and therefore a redemptioner.

Still farther, as we have seen, under the statutes of this state, the deed executed by the sheriff relates back to and covers the whole title of the mortgagor at the time the mortgage was given. From this fact, and from the construction which is given the words "sale" and "foreclosure," in this connection, it necessarilly follows that the property sold is the whole title and interest of the mortgagor in the mortgaged premises at the time the foreclosed mortgage was given, and that, if the contention of the respondent be correct, no other conclusion can be drawn than that the holder of no mortgage given after the one on which the foreclosure proceedings occurred can be a redemptioner, or have the right to redeem, and therefore the inevitable effect of respondent's construction of the law would be to completely thwart the intention and the purpose of the legislature in providing for redemption by holders of subsequent mortgages. We conclude that the sale

in the exercise of the power contained in a mortgage, which conveys the title of the mortgagor, is the sale as completed by the execution of deed at the expiration of the period allowed for redemption.

5. It is contended in respondent's original brief that, Sannan having, as a redemptioner, redeemed from the holder of the prior certificate of sale when the records disclosed no subsequent incumbrance on the property, he is entitled to the protection of the recording act as against any attempted redemption by the holder of a mortgage given during the period allowed for redemption, and not recorded until just before the expiration of the 60 days allowed for a redemption from a redemptioner. On the first argument we were impressed with the soundness of this contention, and that it followed the conclusion there reached on the preceding point; but on reargument respondent did not insist upon it. We have, however, made a careful examination of authorities. The decision of the preceding point would seem to dispose of this question, because the mortgage held by Serumgard could not possibly have been recorded until after the sale under the prior mortgage, for the reason it had not been given at the time of such sale. It therefore becomes plain that, when we hold that Serumgard was a redemptioner under the redemption statute, the recording law cannot be held to deprive him of that right. If there is any conflict between the redemption law and the recording law, in view of the object of the former, it, rather than the latter, must control. The general recording law has no application. That applies only where it is sought under an instrument executed prior, but not recorded to assert rights superior to those claimed under an instrument subsequently executed, but first recorded. In the case at bar Serumgard is not attempting to assert rights superior to the plaintiff, but inferior thereto. He is asserting rights as a redemptioner, and necessarily thereby he concedes they are inferior, and not superior, to those of the prior lien-holder. Pollard v. Taylor, 13 Ala. 604, squarely sustains this proposition. Nothing in Foorman v. Wallace conflicts with it, and we construe Phillips v. Hagart, supra, as authority on this point, as well as the preceding one. This holding does not deprive the plaintiff of any legal right. He still obtans payment of his lien against the land, and repayment of all he has invested in making his redemption, with interest on both sums.

A purchaser at a foreclosure sale and those redeeming from him are bound to know the law; i. e., they are bound to know that the mortgagor may, at any time before the year for redemption expires, give a mortgage upon the property sold, and that the mortgagee in such mortgage is a redemptioner. Hence there is no possibility of the purchaser or the first redemptioner being prejudiced because the mortgage of the last redemptioner is not recorded. The purchaser and the prior redemptioner act with knowledge that there may be a subsequent redemptioner.

Indiana cases are not authority, because the statute of that state permits the party seeking to redeem to do so if his mortgage was recorded within the year for redemption. In Condit v. Wilson, 36 N. J. Eq. 360, there is practically no discussion of the question, and, even if it may be construed as in point, we are not justified in following it, in view of the plain purpose of the redemption law and the finding that defendant is a redemptioner. Several authorities establish the rule that a party seeking to redeem by virtue of holding a subsequent lien need only hold a lien at the time he seeks to redeem. It cannot be contended that an unrecorded mortgage is not a lien. Sannan suffers no loss by permitting a redemption. While he may suffer the loss of an opportunity to speculate on the land, or obtain it for less than its value, yet this is not such a loss as the redemption statute is intended to protect against. Respondent cites several cases holding that assignment of a mortgage is a conveyance within the meaning of the recording act, as being analogous to a certificate of redemption; but they are so held to protect debtors who make payment to the original mortgagee without notice of the assignment required by law.

We therefore conclude that the appellant must prevail. The judgment of the district court is reversed, and the case is remanded, with directions to that court to enter judgment in conformity with this opinion. All concur.

Fisk, J., disqualified; Hon. Chas. F. Templeton, Judge of the First judicial district, sitting by request.